757 P.2d 675

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Richard ELISONDO, Defendant–Appellant.**

No. 17209.

Supreme Court of Idaho.

June 9, 1988.

Petition for Rehearing Denied July 28, 1988.

Renae Hoff, Caldwell, for defendant-appellant.

Jim Jones, Atty. Gen., David R. Minert, Deputy Atty. Gen. (argued), Boise, for plaintiff-respondent.

SHEPARD, Chief Justice.

This is a review of the decision of the Court of Appeals (*State v. Elisondo*, 112 Idaho 815, 736 P.2d 867 (1987), in which appellant Elisondo's conviction for aggravated battery was affirmed. The dispositive issue here is the admission at trial of the preliminary hearing testimony of an eyewitness to the crime. Prior to 1981 the decisions of this Court prohibited the admission of such preliminary hearing testimony. In 1981 the then constituted Court overruled those prior decisions in *State v. Mee*, 102 Idaho 474, 632 P.2d 663 (1981) and held that the admission of such preliminary hearing testimony was not error. In the instant case the Court of Appeals followed the decision in *Mee* and affirmed the convic-

tion. Today we overrule the decision in *State v. Mee, supra,* reverse the conviction, and remand for further proceedings.

The victim of the crime was the uncle of appellant Elisondo, 74–year–old Cruse Galindo. The circumstances and severity of the crime are set forth in the opinion of the Court of Appeals and are perhaps also demonstrated by the trial court's imposition of a 14–year indeterminate sentence. At the preliminary hearing, testimony was given by the victim Galindo and the defendant's sister Martha, and the defendant's daughter Christina, both of whom were witnesses to the crime.

Although subpoenaed, the defendant's sister Martha failed to appear and testify at trial. The efforts of the State to locate and produce that witness, and whether the State made a "reasonable good faith effort" to secure the attendance of Martha are amply set forth in the decision of the Court of Appeals. The issue of a witness being "unavailable" in spite of the State's "good faith effort to obtain his presence at trial," was raised by the majority opinion in *Mee,* as it related to asserted violation of the confrontation clause of the sixth amendment to the United States Constitution. *See Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). Since our decision today is not based on the confrontation clause of the United States Constitution, and since we overrule *Mee,* further discussion or decision on unavailability of the witness despite asserted good faith efforts of the State, is unnecessary.

As stated by the Court of Appeals in its opinion in the instant case:

In *Mee,* the Court departed from an 80–year–old Idaho practice by condoning the admission at trial of the preliminary hearing testimony of a witness who refused to testify at trial despite reasonable efforts by the trial court and the state to have her testify.

In *Mee,* this Court stated in its 3–2 decision:

Appellant contends that the use of Miss Priest's preliminary hearing testimony was foreclosed by *State v. Villarreal, supra* [94 Idaho 246, 486 P.2d 257 (1971)], and its predecessory case *State*

*v. Potter,* 6 Idaho 584, 57 P. 431 (1899), overruling *Territory v. Evans,* 2 Idaho 651, 23 P. 232 (1890). We agree.

The Court then proceeded to overrule *Villarreal* and *Potter.*

In *Mee* the Court indulged in considerable discussion as to the facts in *Potter,* pointing out that the *Potter* Court was dealing with "depositions" of witnesses, and based its decision on the asserted violation of the confrontation clause of the United States Constitution. The Court in *Mee* correctly analyzed the decisions of the United States Supreme Court, which hold that the confrontation clause of the United States Constitution is not offended when the testimony of a witness at a preliminary hearing is later used at trial under certain circumstances, *i.e.,* that the witness is unavailable at trial and good faith efforts have been made to secure attendance at trial, and that there exists sufficient indicia of trustworthiness and reliability. *See Ohio v. Roberts, supra; California v. Green,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970).

The Court in *Mee* gave little if any attention to the previous decision of this Court in *State v. Villarreal, supra.* The Court in *Mee* inferred that the sole basis of the decision in *Villarreal* was the Court's previous decision in *State v. Potter, supra.* The Court in *Mee* then peremptorily overruled both *Potter* and *Villarreal.*

*Ohio v. Roberts, supra,* and arguably *California v. Green, supra,* suggest that with the satisfaction of certain safeguards the testimony of a witness taken at a preliminary hearing is admissible at trial and such procedure does not offend the confrontation clause of the United States Constitution. On the other hand, we are cited to no authority of the United States Supreme Court, or any other court, holding that the prohibition to introduction of such preliminary hearing testimony is somehow offensive to the strictures of the United States Constitution. In fact, the court in both *Green* and *Roberts* points out that the states remain free to make their own decisions in this area without violating the confrontation clause of the federal Constitu-

tion. As stated by Chief Justice Burger in his special concurrence in *Green:* "I add this comment only to emphasize the importance of allowing the States to experiment and innovate especially in the area of criminal justice. If new standards and procedures are tried in one State their success or failure will be a guide to others and to Congress."

In *Mee* the Court noted that Idaho was then in a distinct minority of the states in prohibiting such testimony. We agree. Nevertheless we note that many of the decisions of other jurisdictions are based only upon the alleged violation of the confrontation clause of the United States Constitution, and do not deal with policy considerations which may dictate the need to prohibit the admission of preliminary hearing testimony of a witness.

The function of a preliminary hearing in Idaho is to determine if an offense has been committed, and further if there is probable cause to believe that the crime was committed by the accused. *State v. Ruddell,* 97 Idaho 436, 546 P.2d 391 (1976); *State v. Haggard,* 94 Idaho 249, 486 P.2d 260 (1971); *State v. Linn,* 93 Idaho 430, 462 P.2d 729 (1969); *Freeman v. State,* 87 Idaho 170, 392 P.2d 542 (1964); *State v. Bilboa,* 33 Idaho 128, 190 P. 248 (1920); *see also* I.C.R. 5.1. As stated in *State v. Linn, supra,* 93 Idaho at 434, 462 P.2d at 733, "[a] preliminary hearing is in no sense a trial and therefore it does not require the same formality and precision observed at a trial." In *California v. Green, supra,* 399 U.S. at 196, 90 S.Ct. at 1955, it was stated: "In most ... criminal prosecutions the preliminary examination is conducted as a rather perfunctory uncontested proceeding with only one likely denouement—an order holding the defendant for trial." Thus a preliminary hearing is a truncated proceeding conducted in a relatively informal manner for which the purpose is to make a finding of probable cause, as contrasted with the establishment of guilt beyond a reasonable doubt.

At a preliminary hearing the defense has little reason to cross-examine prosecution witnesses since "only television lawyers customarily demolish the prosecution in the magistrate's court" and it is assumed by most to be a tactical error to indulge in extensive cross-examination of prosecution witnesses since such "may easily amount to a grant of gratis discovery to the state." *See* Brennan, J. dissenting in *California v. Green, supra.* As noted in the dissent in *Mee:*

> Until today it has been deemed advisable by the prosecution, the defense and the courts that an accused be granted a preliminary hearing at a very early point in time. Reflecting the concern of the court is Idaho Criminal Rule 5.1 indicating that if an accused is in custody, a preliminary hearing must be held "in any event not later than 14 days following the defendant's request for a preliminary hearing," and if not in custody then "no later than 21 days after the request for a preliminary hearing.
>
> From the standpoint of the prosecution, it is clearly undesirable to, at the preliminary stage, conduct an entire trial, but rather it is better to present only such evidence as will satisfy the probable cause requirement, to thereafter file an information and then prepare for and go to total trial as quickly as possible to be consistent with the accused's right to a speedy trial. From the defense standpoint, if the prosecution has no case, it will be discovered in its failure to sustain its burden of showing probable cause and the accused will be free at an early time.
>
> If an accused must anticipate that upon his ultimate trial he may be faced with the testimony taken at the preliminary hearing, he must be thoroughly prepared at the preliminary hearing. Clearly all discovery on the part of the defense must be completed prior to the preliminary hearing and presumably all motions to suppress or for a physical or a mental examination and the like should have been made and ruled upon prior to the preliminary hearing. The defense would not be able to, as is presently customary, reserve its cross-examination for the time of trial. In brief, the result in preliminary hearing procedure would

in time and effort be largely duplicative of that spent at a subsequent trial. I doubt that the increased thorough preparation for a preliminary hearing can be conducted within the time constraints of our present rules and policies.

We conclude that the Court erred in *State v. Mee, supra,* when it authorized the introduction of the preliminary hearing testimony of a witness not present at trial. Hence, we overrule *State v. Mee* to the extent it is inconsistent with our decision today. We emphasize that our decision today is not based on an asserted violation of the confrontation clause of the United States Constitution, but rather the independent right of a state to exercise its own authority in this area, and our view that public policy considerations require such decision. In determining whether this decision should apply prospectively or retroactively, we have weighed the purpose of this new rule, the reliance of our trial courts and prosecutors on *State v. Mee,* and the effect of this new rule on the administration of justice. *State v. Whitman,* 96 Idaho 489, 491, 531 P.2d 579, 581 (1975). We conclude that our decision shall apply only prospectively, *i.e.,* to this case, to future appeals, and to appeals now pending in which similar testimony was admitted.

The conviction is reversed and the cause remanded for further proceedings.

BISTLINE, HUNTLEY and
JOHNSON, JJ., concur.

HUNTLEY, Justice, concurring.

I concur in the majority opinion and further note that even were the law to be as stated in the dissent of Justice Bakes, a reversal of the conviction would be required because the witness was not "unavailable" as more fully explained in the separate opinion of Justice Bistline.

BISTLINE, Justice, specially
concurring.

I.

I found it difficult to understand how Justice McFadden and Justice Donaldson could join in Justice Shepard's opinion in the *Villarreal* case, and then ten years and one month later join forces with Justice Bakes and overrule it in the *Mee* case. I joined Justice Shepard's dissent in the *Mee* case, and today I am pleased to vote for the return to *Villarreal,* just as I was equally gratified that in *Cheney v. Palos Verdes Inv. Corp.,* 104 Idaho 897, 665 P.2d 661 (1983), Justice Shepard turned the Court back into the path of righteousness when he took the final step of overruling *Cox v. Stolworthy,* 94 Idaho 683, 496 P.2d 682 (1972). *Cheney, supra,* 104 Idaho at 904, 486 P.2d at 668. *Cox v. Stolworthy,* and its companion case, *Jolley v. Puregro,* 94 Idaho 702, 496 P.2d 939 (1972) were both aberrational departures from long-established Idaho case law which were *not* solicited by the parties who were before the Court, but were purely a result of what I denominate as judicial tinkering by the authors and that which legal writers call judicial activism. Under either appellation the pastime is an improper activity for an appellate court, especially when not sought.

I felt exactly the same way when *Villarreal* was needlessly overruled in Mr. Mee's case. My own caution extended there was that the trial bar generally and the litigants in criminal cases would fare better if this Court did not interfere with long-established case law absent any illuminating reason for doing so. *Mee* at 102 Idaho 486, 632 P.2d at 675.

The interested reader who peruses *Coleman v. Alabama,* 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970) will find a discussion involving the Alabama preliminary procedures (which appear to be the same as in Idaho) in language which is much the same as from the then 70–year old *Potter* case which Justice Shepard quoted again in *Mee* as he had in *Villarreal:*

> When we recall as every lawyer who has any extended experience in criminal law practice may do, how very perfunctory these preliminary examinations are, not only on the part of the prosecution, but more frequently, of necessity, on the part of the defendant, the uncharitableness of the rule is apparent. It is always the policy of the prosecution, on prelimi-

nary examinations, to only carry its investigations to the extent necessary to secure the holding of the defendant; and it is seldom that the defendant feels warranted in going fully into his defense upon a preliminary examination before a court, where it is only required that it shall be made to appear that the offense named has been committed, "and that there is sufficient cause to believe the defendant to have been guilty thereof." *Id.*, 94 Idaho at 248, 486 P.2d at 259, quoting *State v. Potter, supra,* 6 Idaho at 589, 57 P. at 432.

*State v. Mee,* 102 Idaho 474, 486, 632 P.2d 663, 675.

## II.

It is understandable that Justice Bakes would rise to the defense of the *Mee* opinion, and at the same time attack the opinion of the Chief Justice. Regrettably, however, that defense is not sustainable, and the attack is unjustified.

Because of the overruling of *Mee* and the return to *Villarreal,* the Chief Justice has written that "further discussion or decision on unavailability of the witness despite asserted good faith efforts of the State is unnecessary." (Majority Slip Op., p. 676). In my view, the content of Justice Bakes' dissent requires a response. Moreover, the trial bench and bar are entitled to more enlightenment as to "the good faith efforts" of the State to have its witness present at trial for the giving of live testimony whereat the jury can assess its veracity and credibility on a hearing and seeing basis. When we were petitioned to review the Court of Appeals' opinion, my attention was immediately aroused by that paragraph which the Chief Justice quoted in today's opinion for the Court, which for ease of reference is:

> In *Mee,* the Court departed from an 80–year–old Idaho practice by *condoning* the admission at trial of the preliminary hearing testimony of a witness who refused to testify at trial despite reasonable efforts by the trial court and the state to have her testify.

Majority Op., p. 676. What the Court of Appeals did not say was that in *Mee* the Court departed from an 80–year old Idaho practice by *upholding* the trial court's admission of the preliminary hearing testimony. In my book there is a world of difference between a court *upholding* as against a court *condoning.* Any dictionary definition of *condone* will sustain that assessment. It is a word of general usage, and its use by the Court of Appeals had to suggest to any reasonable mind that a unanimous Court of Appeals was less than enthralled with the change in the case law of Idaho wreaked by the *Mee* majority. That court went on to explain, "Heavily relying on the arguments raised in the dissenting opinions, Elisondo invites us to reject *Mee.* We decline the invitation to do so. Regardless of the merit of those dissenting opinions, we *must* adhere to the Court's determination of the matter." *State v. Elisondo,* 112 Idaho 815, 817, 736 P.2d 867, 869 (Ct.App.1987).

So burdened with *Mee* the Court of Appeals then made its review of the record and found no trial court error in having allowed into evidence the testimony of an absent witness who would be brought into the courtroom very shortly after the jury trial had ended.

The Chief Justice in his *Mee* dissent had raised before unseeing eyes his well-considered and well-expressed caution as to the effect of the *Mee* majority opinion overruling *Villarreal,* "saying of it, that is erroneous and will result in substantial and far-reaching damage to our system of criminal justice." *Mee, supra,* 102 Idaho at 484, 632 P.2d at 673 (1981). He explained at length. *See* 102 Idaho at 486–87, 632 P.2d 675–76.

The foregoing views and predictions of Chief Justice Shepard were fully proven true and vindicated by the rulings of the trial court in *Elisondo,* and affirmed by the Court of Appeals.

The Court of Appeals in its assessment that the prosecution had acted in good faith in attempting to have the witness available,

ignored the timing of the events leading up to trial: [1]

February 25, 1985 Information filed

March 5, 1985 Set for trial on April 15, 1985. By stipulation of counsel court trial reset for June 27th

May 9, 1985 Cruse Galindo's affidavit filed (see footnote 1)

June 21, 1985 Prosecutor has subpoena issued for Martha Elisondo to appear at trial on June 27

June 27, 1985 Court convenes for trial, and at 9:46 a.m. the following occurs:

COURT: Are you prepared now to proceed in the Elisondo Case.

MR. MORROW: Yes, Your Honor.

MS. HOFF: Yes, Your Honor.

MR. MORROW: Judge, did you want to take up the matter of State's witnesses all at this time?

COURT: Do you have your witnesses?

MR. MORROW: Judge, I have one that is missing this morning, and I can provide some information to the Court about, that being Martha Elisondo.

She in my judgment is an absolutely crucial and material and necessary witness to the State's case, was served with a subpoena last week by Leonard Vanscoy of the Sheriff's Office and is aware of today's trial.

Deputy Vanscoy has been in Parma since 5:00 a.m. this morning, initially was parked near her house to try to follow her to the fields and keep track of her to see whether she was going to come to court or not.

He learned through talking with people that she had left two days ago and is apparently in the State of Oregon.

She's certainly not here. I've checked the halls this morning. She was due here under subpoena at 9:30. By the court's clock, it's 9:53. I've checked the hallways and the corridors and checked our office. She's not here.

Therefore, pursuant to Idaho Code Section 9–709 and 710,[2] I ask the Court to issue a warrant for her arrest for the attachment of a witness. I'll submit the bench warrant to the Court.

COURT: Very well.

June 27, 1985 At the afternoon session of court the following occurred:

MR. MORROW: Your Honor, at this time I had intended to call Martha Elisondo as the State's next witness. As the Court knows, she was served with a subpoena to appear and has not appeared. The court has issued a warrant to get her here.

I've just spoken with Deputy Vanscoy who's been attempting to locate her throughout the day, and he has been unable to do so.

What I would propose to do at this time is to introduce the testimony of Martha Elisondo from the preliminary hearing transcript. I would do so under Idaho—or rather Idaho Criminal Rule 15, a deposition, and State versus Russell Mee, use of a preliminary hearing transcript at trial.

I would also purport to the Court that the testimony of Martha Elisondo is material and necessary. She was the eyewitness to the events that have been described in a way by Mr. Galindo, the victim.

And further in support of this request by the State, I would like to call Deputy Vanscoy for some short testimony concerning the unavailability of witness Martha Elisondo.

\* \* \* \* \* \*

Q Would you relate to the Court the events that occurred while that service was taking place, please.

A Yes. I waited for Martha to come from back to work there, employer's house. I served her in her car.

---

1. Not giving any mention in the Court of Appeals opinion is the motion of the alleged victim, Cruse Galindo, in affidavit form, to dismiss the prosecution because the affray was all an accident. The trial court ruled against the motion.

2. I.C. §§ 9–709, 9–710 are part of the Code of *Civil* Procedure, and have been so since 1881.

Martha—I served the paper, I gave her her copy, told her what date to be in court, what time and what the charges were for.

She advised me she was no longer involved in this incident, threw the paper out of the car.

I picked it up and put it in the backseat and advised her—re-advised her that she was to be in court on June 27th at 9:30.

She drove away, went about a half block down the road to the—in front of 509 Grove Street, stopped her car, got out, threw the paper on the ground again and drove away.

\* \* \* \* \* \*

Q Now did you attempt to locate Martha Elisondo today on this date? [June 27, 1985]

A Yes, sir.

Q And when did you being doing that?

A Approximately 5:30 this morning.

Q And what did you do in regard to attempting to locate her?

A We checked her residence. She was not there.

We went down to where her employer's house is hoping to catch her on her way to work, could not locate her.

I then checked town for her vehicle. I was unable to locate that.

We had spoke to a few people and said she was working in the Roswell area. I went up to the Roswell area and in the fields talked to one of the farmers that had hired her crew boss, and she was not in the crew today, and she had not been seen in the area for a couple days now.

Q Did you have any information that she may have left the state?

A Not directly, sir. *Just my thinking that she has left.*

MR. MORROW: I have no further questions.

The court ruled that the preliminary hearing testimony would be admitted, and at 2:07 p.m. had the jury returned to the courtroom, and the court then advised the jury in pertinent part:

COURT: A person by the name of Martha Elisondo is alleged to have been an eyewitness to the event which is set forth in the Information that I read to you.

Outside the presence of this jury, a duly constituted Deputy Sheriff of Canyon County has testified before this Court that he personally served her with a subpoena to appear at this time and on this date earlier this morning as a witness in this case, and she has failed to appear. And, in fact, the officer testified that after driving briefly—a brief distance from where he served her, she got out and threw it down on the ground and left, *and they have been trying to locate her since then and have been unsuccessful in those efforts.*

The trial judge apparently misunderstood the information presented to him. He correctly grasped the incident of the service of the subpoena on June 21, but was in error in believing that "they" (the Sheriff's officers) had been trying to locate her again since June 21. To the contrary, the record demonstrates that, notwithstanding her display of a wholly non-cooperative attitude on June 21, *no further action was taken until the very morning of the trial,* as reported to the trial judge.

If it was the design of the prosecution to make certain that Martha Elisondo was not present at trial, exactly the non-action engaged in would admirably accomplish that result. It is difficult to conceive of a sheriff's officer of even limited experience who would not have advised the prosecutor's office of the run-in with Martha Elisondo. It is equally difficult to conjure up a prosecutor who would not have taken proper steps immediately to ensure that such a reluctant and hostile witness would be present at trial—especially where in the prosecutor's judgment that witness *"is an absolutely crucial and material and necessary witness to the state's case."*

Rule 46.1 of the Idaho *Criminal* Rules was available to the prosecution, and not a shred of an excuse was offered to the trial

judge for the failure to have used it. Martha Elisondo had clearly demonstrated her contempt for the subpoena which was served upon her on June 21; she threw it on the ground. In the words of the serving officer, she made it known that she was having nothing to do with the prosecution of the charges against her brother. In short, she had shown—"not that it may become"—but that it *was* "impractical to secure her presence by subpoena for ... trial."

Rule 41.6 contemplates that exact situation.

> **Rule 46.1. Bail for witnesses.** If it appears by affidavit that the testimony of a person is material in any criminal proceedings and if it is shown that it may become impracticable to secure his presence by subpoena for a hearing or trial, the court may require such witness to give bail for his appearance as a witness in an amount fixed by the court. Such bail may be deposited in the same manner as bail for a person charged under Rule 46. If the person fails to give bail to appear as a witness, the court may commit him to the custody of the sheriff pending final disposition of the proceedings in which his testimony is needed.[3]

The brief of the state which was submitted to the Court of Appeals states at page 9, "The state [prosecutor] argued that it had made an adequate showing that Martha Elisondo was unavailable and that a good faith effort had been made in an attempt to locate her." The brief points to the trial court's ruling:

> There's no doubt in my mind that a proper predicate is laid for admissibility. And based upon the Supreme Court decision in *State v. Russell Mee*, 102 Idaho 474 [632 P.2d 663], it's admissible.
>
> Efforts have been made to serve. In fact, the testimony of the officer is that there was a deliberate throwing away of the subpoena. So obviously, *a reasonable effort was made,* and this case has been decided, and it can be admitted before this jury. (Emphasis added).

In actuality, as pointed out earlier, the subpoena was served. But the recipient of it made crystal-clear that she would not respond. Hence it cannot be said that a "reasonable effort was made" *to have the witness present at the trial.* Rule 46.1 might just as well have never been written. And the prosecution was aware, previous to serving Martha Elisondo with the subpoena, that her father, the alleged victim of the assault, had already backed away from the prosecution and would perforce be an unimpressive and reluctant witness.

Moreover, the trial court did not reach the point of specifically ruling that a good faith effort had been made to have the witness available at trial. Instead, the ruling made was simply that "a reasonable effort was made." One effort which was made, successfully, was that of service of the subpoena. A futile effort was made by the officer on the morning of the trial to locate Martha Elisondo, but the officer had with him no bench warrant! Where it has to be conceded by anyone that the witness was not going to come to court—as witnessed by the officer's morning of trial effort to locate her, such did not in any way constitute a showing of an effort to produce her in the courtroom. For certain there was no good faith exhibited in performing a futile act. On the morning of the day of trial, then, for the prosecutor to obtain the issuance of a bench warrant is almost ludicrous.

A reasonable effort to serve the witness with a subpoena, which was done, and a last minute search to locate the witness, coupled with a last-minute issuance of a bench warrant for her arrest and presentation to the court, simply does not mount up to a good faith effort on the part of the prosecution to have that witness be a live witness in the courtroom. And the trial judge did not so rule. Yet, here is what the Court of Appeals opinion transformed those circumstances into: "Here, based on undisputed testimony of Officer Vanscoy, *the trial court concluded that a reasonable good-faith effort was made to secure*

---

**3.** The rule goes on to provide that the court may order the release of the witness if he is detained an unreasonable length of time. Six days until trial would not amount to such.

*the attendance of Martha.* On appeal, we will uphold this ruling in the absence of a clear abuse of discretion." That transformation of the trial court's ruling simply is not justified, and ought not be allowed to stand.

Long, long before any exposure to law school, it was my understanding that in Idaho material witnesses could be held for trial, unless they could make bail. In law school we learned that this is so in most states. Counsel for Elisondo informs us that the practice is not unknown in Canyon County. In footnote 4 of her brief filed in support of her petition for review by this Court, she states that even as she was writing a brief seeking review in this Court, p. 4, the prosecutor's office had held in the Canyon County Jail, for weeks, a material witness to an alleged murder—all the better to insure the presence of that witness in judicial proceedings relevant to the alleged murder. In that brief it is also pointed out that after the one and one-half day trial followed by sentencing on Friday, June 28, 1985, the recalcitrant witness had been located and brought into Court on July 2, 1985, and admonished—all of which was unknown to defense counsel until it surfaced in the record on appeal, pp. 88, 89. The return on the bench warrant is not in the record, and defense counsel likely speculates, as must we, what the officers had to say as to their belated success at discovering her. No inquiry was made of the prosecutor, nor did he make any statement insofar as the court minutes reflect. The prosecutor was present.

Truly, here was a decision of the Court of Appeals which was deserving of review. The petition for review presented this Court with an opportunity to reconsider the reasoning, or lack thereof, which prompted this Court to overrule the *Villarreal* case, thereby destroying case-law precedent which had endured and served well the people and the criminal justice system since 1889.[4] A re-reading of the *Mee* majority opinion drives home the assessment of it made by Justice Shepard: "In its discus-

sions of the Confrontation Clause of the Federal Constitution the majority here have merely set up and demolished a straw man." There was no reason for that opinion, and no reasoning went into it. A fine dissertation on federal cases, yes; but any realistic application to our existing Idaho criminal procedure, no. The district judges recognized, as here, that they were bound by *Mee.* The Court of Appeals recognized that it, too, was bound by *Mee,* "Regardless of the merit of those dissenting opinions, ..." *Mee* was incompatible with what are the realities of the criminal law practice. The *Mee* opinion pointed to *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980) for the proposition that "unavailability is a Constitutional prerequisite to admission of prior testimony against a defendant at trial." 102 Idaho at 480, 632 P.2d at 669. The *Mee* opinion went on to quote from *Roberts,* "A witness is not 'unavailable' ... unless the prosecutorial authorities have made a *good faith effort* to obtain his presence at trial." 102 Idaho at 480, 632 P.2d at 669.

We look at a record which shows that the sum total effort of the prosecutorial authorities in Elisondo's case was to obtain the issuance of a subpoena and, thereafter knowing of the reluctance of the witness, do nothing further until on the morning of trial when a bench warrant for the arrest of the witness was obtained.

Long before *California v. Green,* 399 U.S. 149, 90 S.Ct 1930, 26 L.Ed.2d 489 (1970) and *Barber v. Page,* 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968), the Supreme Court of Idaho ruled in an appeal from an acquittal in a first degree murder charge that a deposition of a material witness was inadmissible unless the prosecution could show, as to a live or absent witness, "that due diligence had been exercised in an effort to secure the presence of said witness at the trial." *State v. Zarlenga,* 14 Idaho 305, 94 P.2d 55 (1908).

---

4. Justice Bakes in dissent by a margin of seven months is able to refer to the *Potter* case as

being of vintage nineteenth century.

Before such deposition is admitted in evidence, the prosecution should further show that the witness is unable to attend by reason of his death, infirmity, sickness, or insanity, or of his absence from the state, *and that due diligence has been exercised in an effort to procure the presence of said witness at the trial.* When these facts have been shown, the deposition may then be admitted in evidence. These facts were not shown in this case, and the court committed no error in refusing to admit the deposition of said witness in evidence.

*State v. Zarlenga,* 14 Idaho at 309, 94 P.2d at 59 (emphasis added).

All of the statutory provisions related in the *Zarlenga* opinion have been part and parcel of the criminal practice act since 1984—without amendment, and the *Zarlenga* case in synopsis form has been an annotation to what is now I.C. § 19–824 ever since the criminal code was recodified in the year 1919. It simply is not believable that there is a prosecutor unaware of those provisions of the criminal code or of criminal rule 46.1—all of which can be used to make a witness available at trial, although 46.1 is of comparatively recent origin and seemingly superfluous of the appellate criminal procedural code statutes.

What the reader of that opinion will observe therefrom is that the Court recognized at that early time the requirement of due diligence to obtain the presence of the witness before his testimony can be presented in previously recorded form whether by deposition or preliminary testimony—albeit the witness is actually out of state. The *Zarlenga* case, out of a sparsely settled western state, just barely into statehood, is on a par with what the Supreme Court of the United States would write 60 years later in *Barber v. Page, supra.*

Many years ago this Court stated that "[t]he primary object of the [Confrontation Clause of the Sixth Amendment] * * * was to prevent depositions or *ex parte* affidavits * * * being used against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." *Mattox v. United States,* 156 U.S. 237, 242–243, 15 S.Ct. 337, 339, 39 L.Ed. 409 (1895). More recently, in holding the Sixth Amendment right of confrontation applicable to the States through the Fourteenth Amendment, this Court said, "There are few subjects, perhaps, upon which this Court and other courts have been more nearly unanimous than in their expressions of belief that the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal." *Pointer v. State of Texas,* 380 U.S. 400, 405, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965). See also *Douglas v. State of Alabama,* 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965).

722

It is true that there has traditionally been an exception to the confrontation requirement where a witness is unavailable and has given testimony at previous judicial proceedings against the same defendant which was subject to cross-examination by that defendant. E.g., *Mattox v. United States,* supra (witnesses who testified in original trial died prior to the second trial). This exception has been explained as arising from necessity and has been justified on the ground that the right of cross-examination initially afforded provides substantial compliance with the purposes behind the confrontation requirement. See 5 Wigmore, Evidence §§ 1395–1396, 1402 (3d ed. 1940); C. McCormick, Evidence §§ 231, 234 (1954).

Here the State argues that the introduction of the transcript is within that exception on the grounds that Woods was outside the jurisdiction and therefore "unavailable" at the time of trial,

and that the right of cross-examination was afforded petitioner at the preliminary hearing, although not utilized then by him. For the purpose of this decision we shall assume that petitioner made a valid waiver of his right to cross-examine Woods at the preliminary hearing, although such an assumption seems open to considerable question under the circumstances.

### 723

We start with the fact that the State made absolutely no effort to obtain the presence of Woods at trial other than to ascertain that he was in a federal prison outside Oklahoma. *It must be acknowledged that various courts and commentators have heretofore assumed that the mere absence of a witness from the jurisdiction was sufficient ground for dispensing with confrontation on the theory that "it is impossible to compel his attendance, because the process of the trial Court is of no force without the jurisdiction, and the party desiring his testimony is therefore helpless."* 5 Wigmore, Evidence § 1404 (3d ed. 1940).

*Whatever may have been the accuracy of that theory at one time, it is clear that at the present time increased cooperation between the States themselves and between the States and the Federal Government has largely deprived it of any continuing validity in the criminal law.*

### 724

For example, in the case of a prospective witness currently in federal custody, 28 U.S.C. § 2241(c)(5) gives federal courts the power to issue writs of habeas corpus *ad testificandum* at the request of state prosecutorial authorities. See *Gilmore v. United States*, 129 F.2d 199, 202 (C.A. 10th Cir.1942); *United States v. McGaha*, 205 F.Supp. 949 (D.C.E.D. Tenn.1962). In addition, it is the policy of the United States Bureau of Prisons to permit federal prisoners to testify in state court criminal proceedings pursuant to writs of habeas corpus *ad testifi-*

*candum* issued out of state courts. Cf. *Lawrence v. Willingham*, 373 F.2d 731 (C.A. 10th Cir.1967) (habeas corpus *ad prosequendum*).

In this case the state authorities made no effort to avail themselves of either of the above alternative means of seeking to secure Woods' presence at petitioner's trial. The Court of Appeals majority appears to have reasoned that because the State would have had to request an exercise of discretion on the part of federal authorities, it was under no obligation to make any such request. Yet as Judge Aldrich, sitting by designation, pointed out in dissent below, "the possibility of a refusal is not the equivalent of asking and receiving a rebuff." [*Barber v. Page*], 381 F.2d [479], at 481 [(10th Cir.1966)]. *In short, a witness is not "unavailable" for purposes of the foregoing exception to the confrontation*

### 725

*requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial. The State made no such effort here*, and, so far as this record reveals, the sole reason why Woods was not present to testify in person was because the State did not attempt to seek his presence. The right of confrontation may not be dispensed with so lightly.

*Barber v. Page*, 390 U.S. 719 at 721, 88 S.Ct. 1318 at 1320 (footnotes omitted, emphasis added).

Justice Harlan in writing separately in *California v. Green, supra*, made these observations in justification of his concurring in the Court's holdings:

Notwithstanding language that appears to equate the Confrontation Clause with a right to cross-examine, and, by implication, exclude hearsay, the early holdings and dicta can, I think, only be harmonized by viewing the confrontation guarantee as being confined to an availability rule, one that requires the production of a witness when he is available to testify. This view explains the recogni-

tion of the dying declaration exception, which dispenses with any requirement of cross-examination, and the refusal to make an exception for prior recorded statements, taken subject to cross examination by the accused, when the witness is still available to testify. Compare *Mattox v. United States, supra,* with *Motes v. United States, supra* [178 U.S. 458, 20 S.Ct. 993, 44 L.Ed. 1150 (1900)].

This rationalization of the early decisions is not only justified by logic but also anchored in precedent. In *West v. Louisiana,* 194 U.S. 258, 24 S.Ct. 650, 48 L.Ed. 965 (1904), this Court in reviewing its early confrontation decisions emphasized *availability* as the thread that tied them together. *West* involved the admission into evidence at trial of deposition testimony, taken subject to cross-examination and under oath, where the deponent was "permanently absent from the State and was a non-resident thereof, and * * * his attendance could not be procured." *Ibid.* Referring, *inter alia,* to *Motes, Mattox, Kirby* [*v. United States,* 174 U.S. 47, 19 S.Ct. 574, 43 L.Ed. 890 (1899)], and *Reynolds* [*v. United States,* 98 U.S. (8 Otto) 145, 25 L.Ed. 244 (1879)], the Court concluded that "in not one of those cases was it held that, under facts such as [were before the Court], there would have been a violation of the Constitution in admitting the deposition in evidence." 194 U.S., at 266, 24 S.Ct., at 654. That the uppermost consideration was the availability of the witness is further underscored by the *West* discussion of the common-law rule that admitted deposition testimony "upon proof being made to the satisfaction of the court that the witness was, at the time of the trial, dead, insane, too ill ever to be expected to attend the trial, or kept away by the connivance of the defendant." 194 U.S., at 262 S.Ct., at 652.

*California v. Green,* 90 S.Ct. at 1948.

Justice Harlan at this point added footnote 17, the first sentence of which read: "That the critical element is *availability* cannot be doubted." He continued on the same vein:

What I would hold on the States *as a matter of due process* is what I also deem the correct meaning of the Sixth Amendment's Confrontation Clause— that a State may not in a criminal case use hearsay when the declarant is available. See *West v. Louisiana, supra. There is no reason in fairness why a State should not, as long as it retains a traditional adversarial trial, produce a witness and afford the accused an opportunity to cross-examine him when he can be made available.* That this principle is an essential element of fairness is attested to not only by precedent, *Motes v. United States, supra; Barber v. Page, supra; Smith v. Illinois, supra* [390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968)], but also by the traditional and present exceptions to the hearsay rule which recognize greater flexibility for receiving evidence when the witness is not available. Furthermore, *it accommodates the interest of the State in making a case, yet recognizes the obligation to accord the accused the fullest opportunity to present his best defense.*

*California v. Green,* 90 S.Ct. at 1949, 1950 (emphasis added).

Justice Brennan's dissenting opinion follows after Justice Harlan's separate concurring. First stating that the issue had been resolved two years earlier in *Barber v. Page, supra,* 90 S.Ct. at 1954, he quoted therefrom the exact language from *People v. Gibbs,* 255 Cal.App.2d 739, 451 P.2d 422 (1967), which Justice Shepard quoted in his *Mee* dissent, respectively 102 Idaho 486, 90 S.Ct. at 1953. He also quoted approvingly the teaching of the California Supreme Court (from whence Idaho's Code of Criminal Procedure was adopted) in that *Green* case:

The California Supreme Court in the present case discussed in more detail the distinctions between a preliminary hearing and trial, stating that 'the purpose of a preliminary hearing is not a full exploration of the merits of a cause or of the testimony of the witnesses. It is designed and adapted solely to answer the far narrower preliminary question of whether probable cause exists for a sub-

sequent trial. The judge in preliminary proceedings is not required to be convinced of the defendant's guilt 'beyond a reasonable doubt,' but need only look for reasonable credibility in the charge against him. *A fortiori* a witness' testimony, though the only evidence adduced, need not be convincing or credible beyond a reasonable doubt, and cross-examination which would surely impeach a witness at trial would not preclude a finding of probable cause at the preliminary stage. Even given the opportunity * * *, neither prosecution nor defense is generally willing or able to fire all its guns at this early stage of the proceedings, for considerations both of time and efficacy. * * * Indeed, it is seldom that either party has had time for investigation to obtain possession of adequate information to pursue in depth direct or cross-examination." [*People v. Green*] 70 Cal.2d [654], at 663, 75 Cal.Rptr. [782], at 788, 451 P.2d [422], at 428 [1969]. F.N. 7, 90 S.Ct. at pp. 1954, 1955.

The Oklahoma Criminal Court of Appeals has also recognized the state's burden to have its witnesses present at trial. In *Grizzle v. State* that court stated the law and applied it:

> The defendant's first and second assignments of error allege a violation of defendant's right to confront his accusers, by the admission into evidence of the prior recorded testimonies of Carolyn Haas and Robert Tanksley. Said testimonies were given at the defendant's first trial of this cause. The defendant contends that the State failed to establish the unavailability of the witnesses for this trial, and there was an absence of adequate confrontation of these witnesses. As to the unavailability of these parties, we have long recognized that the State shoulders the burden of proving, by a good faith effort, that said witnesses were truly unavailable. *Barber v. Page*, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968); *In re Bishop*, Okl. Cr., 443 P.2d 768 (1968). Whether the State can maintain this burden is necessarily a question of proof. The glaring examples at either end of the spectrum

are of little aid when the question enters into the hazy middle ground of "good faith effort." We examine the present controversy within this context and find that it rises above the fog of constitutional violation. While the State's research did not touch all possible avenues, *it was not a last minute, mad-dash effort.*

559 P.2d 474, 478 (Okl.Cr.1977).

It cannot in good conscience be urged that the obtaining of a bench warrant on the morning of what appeared to be a one-day trial for a witness who had "trashed" a subpoena that was earlier served upon her, letting it then be known in unmistakable language that she would not participate as a state's witness against her own brother, was not a last-minute mad dash effort—indeed it was the most glaring example imaginable at the far distant end of the spectrum.

Accepting at face value the prosecutor's assessment of the recalcitrant and absent Martha Elisondo, i.e., "material, crucial, necessary," it cannot be said that the state's failure to have her present falls in the category of harmless error. *Thomas v. United States*, 530 A.2d 217 (D.C.1987).

Procedural due process, whether it be of the genesis of court-promulgated rules, statutory enactments, or case law precedent, guides the system of criminal jurisprudence and must be carefully adhered to.

### III.

The final comment in Part II has caused me to pause and add some purely gratuitous thoughts as to a reported practice in a geographical area of the state where statutorily mandated procedures, case-precedents, or promulgated rules are not being faithfully adhered to by magistrates, or by magistrates acting on behest of prosecutors. Report, while better than rumor, can still lose accuracy of detail; hopefully, nothing at all is amiss.

It has been suggested that the practice complained of is that of not honoring the statements of accused, on being given their *Miranda* warnings, that they are indigent and want the services of an attorney.

The *Miranda* warnings include advising the suspect not just of his right to have a lawyer's advice before being questioned, and to have the lawyer present during questioning, but also that the suspect be informed that if he wants a lawyer but cannot afford one, a lawyer will be provided free of charge to the suspect. The forewarning is that where such warnings are not given, an officer assumes the risk of botching what might have otherwise been a commendable prosecution for a bad crime.

The *Miranda* warnings are required of an officer before questioning when the suspect is in custody—which does not necessarily mean placed in the patrol car and/or taken to the police station. Even when a suspect has not been *formally* told that he is under arrest, he is constructively in custody when, after being detained, the officer entertains a strong suspicion of the suspect's complicity in an offense and is unwilling to let him walk away, and there is some official behavior which would induce a suspect to feel that he is not free to go or do as he pleases. Under those circumstances questioning the suspect would amount to a custodial interrogation the results of which might be excludable on challenge absent the giving of the *Miranda* warnings. Such are in a general fashion the rules of the game as to the *Miranda* warnings mandated by the Supreme Court of the United States.

But there is the requirement of state law, I.C. § 19–853, that a person who has been merely detained by an officer and is not represented by an attorney must be informed by that officer of his right to counsel, and if a needy (indigent) person, of his right to be represented by an attorney at public expense.

More than that, however, the officer must thereupon notify either the court or the public defender if there is one, and if there is, then it must be the public defender who is notified. If there be none, then the "or as the case may be" of § 19–853(a)(2) comes into play, because it will then become the obligation of the court to inquire into indigency before appointing an attorney. The public defender, of course, can and should satisfy himself with the indigency of the detained or in-custody suspect. Only where a detainee or custodial suspect has *not* answered affirmatively to the officer's inquiry does it become necessary for the court to make the proper inquiry when the detainee-suspect first appears.

It is beyond cavil that the "state should provide counsel *at the earliest feasible time* after an accused is taken into custody." *State v. Wuthrich*, 112 Idaho 360, 362, 732 P.2d 329 (Ct.App.1987) (emphasis added) (citing Task Force on Providing Services, *Providing Defense Services*, 1 A.B.A. *Standards for Criminal Justice* § 5–5.1 (1979)). The mandate of the statute is clear: the public defender should not be kept at bay until a *formal* indigency hearing has been held pursuant to I.C. § 19–854. A public defender should be allowed, nay, encouraged, to interview indigents who have requested counsel prior to *any* court appearance or formal indigency hearing.

The "earliest feasible time" does not equate as well with court-promulgated Rule 44(a) I.C.R. as it does with Rule 44(b) which states that, "The procedures for implementing the right set out in subsection (a) above shall be those provided by law." Rule 44 was adopted in December of 1979, and made effective as of July 1, 1980. The words "provided by law" mean by legislative enactment. When the Supreme Court enacted its Rule 44 in 1979, the legislature's "law" had been in effect since July 1, 1967. Fortunately, or unfortunately, depending on one's perspective of the rules, the rule failed to mention the procedure to be followed when a suspect or accused detainee tells an officer that he is indigent, desires counsel, and there *is* a public defender employed by the involved county. All that needs to be done, however, is follow the statute, and notify the public defender—who will then assume his statutory function of providing representation. Importantly, all of this should be done before a magistrate does any more in the case other than ascertain the defendant's true name, and set a date for arraignment.

This discourse assumes, of course, that the accused detainee/suspect is charged with a serious crime as also defined by the legislature.

Obviously the early interposition of the public defender between the detained suspect and the prosecutor will have a salutary effect on all concerned, and moreover remove the magistrate from the unenviable position of having to explain to an accused what is entailed in being charged and prosecuted. In all likelihood the presence of the public defender may result in some unclogging of the felony trial calendar when it appears that both sides can go away happy on the agreement that the accused will plead guilty to a misdemeanor.

It might be argued that it is a waste of judicial resources to have the public defender involved at such an early stage where it may be later found at a formal hearing that the accused is not, in fact, indigent. Those cases, methinks, are infrequent. More important, such a consideration is *de minimis* in light of the prejudice resulting from the absent, but not unwilling, service of a public defender at the initial appearance. Moreover, bond should not be set without the public defender. The Idaho Constitution, art. 1, § 6 guarantees that excessive bail "shall not be required." The lay person confronted by a seasoned prosecutor is much less likely to be released on personal recognizance—and more likely to have an excessive bail imposed—without the aid of counsel. Moreover, unrepresented indigents are also prejudiced at an indigency hearing when unwitting admissions are made as to one's prior criminal record—which is an inquiry of the court as a matter of course. Those lucky enough to afford a private attorney do not suffer a similar fate.

To be certain, if a plea is made at an initial appearance, which is often the case in misdemeanor cases, an indigent has the right to counsel. *White v. Maryland,* 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963). Again, the truth seeking process is not served by excluding the public defender.

"Assembly line" justice is inconsistent with the Idaho criminal system. Otherwise, "[s]uddenly it becomes clear that for most defendants in the criminal process, there is scant regard for them as individuals. They are numbers on dockets, faceless ones to be processed and sent on their way." *Argersinger v. Hamlin,* 407 U.S. 25, 35, 92 S.Ct. 2006, 2011, 32 L.Ed.2d 530 (1972). Hobbling a willing public servant such as the public defender would be admirable if mere efficiency of disposition was the goal. However, we should avoid the false economy of the assembly line which elevates efficiency over justice.

Back of it all and not to be forgotten are the statutory requirements of the code which require that a suspect/accused placed in custody must be forthwith taken before a magistrate, and a charge against him be laid before the magistrate. I.C. §§ 19–601 through 19–608, 19–615. Forthwith means forthwith, not tomorrow, and not when convenient. I.C. § 18–702 provides a penalty for willful delay on the part of an officer.

In *State v. LaMere,* 103 Idaho 839, 655 P.2d 46 (1982), the district court, the Honorable James G. Towles, entered a suppression order as to the defendant's statements made by LaMere while in custody, but without any compliance with the statutory requirement of taking LaMere before a magistrate, and also without effectively informing him of his right to counsel at public expense. Judge Towles' opinion tells prosecutors and defense counsel how important it is to comply with mandatory statutes:

> Contrary to the State's contention I.C. 19–853 clearly pertains to any defendant, whether needy or not, and is one of the warnings mandated by *Miranda.* The Idaho statute adds an additional requirement to the *Miranda* case and was designed to ensure the fact that the warning could be proved as well as the acknowledgment and understanding by the defendant.
>
> At any time that a person is arrested or in custody and is questioned prior to arraignment before the Court, it is abso-

lutely imperative that the police officers comply with Subsection (e) of I.C. 19–853.

As to the statement taken from the defendant at or about 4:35 p.m., on October 23rd, 1978, it is apparent that the *Miranda* Warning and acknowledgment of the warning was contained on the taped statement and that the tape of such statement was filed with the Court next concerned at the time of the suppression hearing.

However, it certainly would be more preferable for a written *Miranda* Warning to be acknowledged in accordance with the statute to further support the voluntariness of such statement. The original interview by the Chief of Police and Officer Wadsworth, of course, did not comply with the statutory requirement in any fashion, and as a result, such statement must be suppressed.

The next serious question involves the delay between the arrest and presenting the matter to a Magistrate for arraignment.

"The voluntary character of a confession obtained prior to arraignment is placed in doubt when there is an unreasonable delay between arrest and arraignment, however, the confession is not per se inadmissible." *State v. Wyman*, 97 Idaho 486 [547 P.2d 531]

As to the delay in arraignment, it is the Court's opinion that there was no reasonable excuse nor was the delay itself reasonable. If the police officer had probable cause to arrest the defendant, he also had sufficient probable cause to present the facts to a Magistrate for the issuance of a Warrant of Arrest and to permit the Magistrate to fix bond, if appropriate. Therefore, the excuse that the officers were too busy or were gathering additional evidence and therefore could not take the defendant before the Magistrate, is not credible. If further evidence needed to be secured, the arrest should not have been accomplished.

This lends credence to the defendant's argument that the delay was for the purpose of obtaining a statement more than for any other reason, and cannot be condoned by the Court as a clear violation of the duty of a police officer to present an accused before a neutral and detached Magistrate "forthwith". The day in question was a Monday and the Court was open and available.

The Court therefore concludes that any statement volunteered by the defendant at the time of the initial booking would not be suppressed, but the violation of I.C. 19–853 would invalidate the subsequent interrogation of the defendant by the Chief of Police and Officer Wadsworth, and the delay in taking the defendant before a Magistrate would dictate a finding that the taped interview at 4:35 p.m. was not voluntary on the part of the defendant, and hence, may not be used at the time of the trial.

103 Idaho at 874–5, 655 P.2d at 81–2.

BAKES, Justice, dissenting:

The Court today, eschewing any suggestion that its decision is based upon the confrontation clause of the sixth amendment to the United States Constitution, concludes that the admission of the preliminary hearing testimony of an unavailable witness in a subsequent criminal trial violates certain "public policy considerations" gleaned from a case nearly a century old, *State v. Potter*, 6 Idaho 584, 57 P. 431 (1899),[1] without explaining how those early "public policy considerations" relate to the public policy expressed in the current statutes, Court decisions and the Idaho Rules of Evidence.

The public policy considerations expressed in *Potter* were essentially two—the confrontation clause of the United States Constitution, and the perceived absence of any statutory authority for the admission of such prior preliminary hearing testimony of an unavailable witness. Both of

1. The Court in *Potter* had itself overruled an even earlier decision of this Court in *Territory v. Evans*, 2 Idaho 651, 23 P. 232 (1890), which, contrary to the *Potter* case, had allowed the admission of such preliminary hearing testimo-

ny. *Potter* was reaffirmed in the later case of *State v. Villarreal*, 94 Idaho 246, 486 P.2d 257 (1971). Subsequently, both *Potter* and *Villarreal* were overruled by this Court's recent decision in *State v. Mee*, 102 Idaho 474, 632 P.2d 663 (1981).

those policy considerations have subsequently been rejected by the United States Supreme Court and this Court. The Supreme Court of the United States, in *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), held that the confrontation clause is not offended by the admission of preliminary hearing testimony at a criminal trial, where the defendant was represented by counsel and had the opportunity to cross examine at the preliminary hearing. The Court in *Ohio v. Roberts* held that the public policy of having all the relevant evidence submitted in a criminal trial outweighed any claim by the defendant that his rights to confrontation were violated because he did not *again* have an opportunity to cross examine a witness. Secondly, the absence of any legislation authorizing the admission of such preliminary hearing testimony at trial, which the Court in *Potter* found significant, is no longer significant. In 1985 this Court adopted the Idaho Rules of Evidence which specifically permit the admission of such preliminary hearing testimony. Those rules further provide that the Rules of Evidence take precedence over any conflicting statutory provisions. I.R.E. 1102. The rules also presumably would take precedence over the absence of any statutory provisions which the Court in *Potter* found significant.

Based upon the public policy considerations expressed in both the confrontation clause of the United States Constitution, as most recently defined by the United States Supreme Court in *Ohio v. Roberts, supra,* and the Idaho Rules of Evidence adopted by this Court in 1985, the trial court did not err in admitting the preliminary hearing testimony of the witness Martha Elisondo. Each of these issues will be discussed separately in more depth.

## I

The majority is inconsistent in its analysis. In at least two places, the majority states that its decision is not based on the confrontation clause.[2] Even though the majority purports to be deciding the case on something other than the confrontation clause, and even though it denotes its reasons for its decision as "public policy considerations," *ante* at 678, the majority's *ratio decidendi* is really based on the right of confrontation as is evidenced by its discussion regarding cross examination, motions to suppress, motions for a physical or mental examination and the like. In short, the majority cites no "public policy considerations" other than those naturally emanating from the confrontation clause, yet the majority contends that its decision is not based on the confrontation clause.

Furthermore, the majority overrules *State v. Mee*, 102 Idaho 474, 632 P.2d 663 (1981). If, as the majority asserts, the instant case truly is not based on the confrontation clause, then we have no occasion to overrule *Mee*. The decision in *Mee* was based squarely on the confrontation clause of the United States Constitution. The majority acknowledges as much, *ante* at 677, when it states, "In *Mee* the Court ... based its decision on the asserted violation of the confrontation clause of the United States Constitution." In summarizing its confrontation clause discussion, the *Mee* Court stated:

> "When the declarant is unavailable, but has previously testified in a judicial forum complete with oath, recordation, presence of the defendant and counsel, and adequate opportunity to cross-examine, that earlier testimony is admissible without violation of the confrontation clause of the United States Constitution." 102 Idaho at 483, 632 P.2d at 672.

Thus, the decision in *Mee* was premised on the confrontation clause; yet the decision of the majority in the instant action "is not based on the confrontation clause." The Court's opinion has not adequately explained why it is necessary to overrule our 1980 decision in *Mee*.

---

**2.** *Ante* at 678, "Since our decision today is not based on the confrontation clause ...," and *ante* at 678, "We emphasize that our decision today is not based on an asserted violation of the confrontation clause...."

## II

The majority purports to be deciding this case on "public policy considerations." However, the public policy of the State of Idaho favors the admission of preliminary hearing testimony in cases like the one at bar. The instant action involves three sources of public policy: (1) that expressed in the United States Constitution, *i.e.*, the confrontation clause; (2) that expressed (or, more accurately, not expressed) in the Idaho statutes; and (3) that expressed in the Idaho Rules of Evidence. As will be shown, *infra*, (1) the confrontation clause permits the admission of the preliminary hearing testimony at issue; (2) the Idaho statutes do not address the issue of the prosecution's use of preliminary hearing testimony; and, filling that void, (3) the Idaho Rules of Evidence expressly authorize the admission of such testimony.

### A.

The United States Supreme Court has previously held that the admission of preliminary hearing testimony, like that at issue here, does not violate the confrontation clause. *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). With this the majority does not quarrel, nor do I; the public policy embodied in the confrontation clause does not prohibit the admission of witness Martha's prior preliminary hearing testimony.

### B.

A second possible source of public policy are the Idaho statutes, specifically I.C. §§ 19–3101 *et seq.*[3] Our decision in *State v. Potter, supra,* was premised on the fact that the statutes then in existence did not expressly permit the prosecution's use of preliminary hearing testimony at trial. The statutes allowed the defendant to use preliminary hearing testimony at trial, but were silent as to the prosecution's use. The Court in *Potter*, overruling an earlier case to the contrary, *Territory v. Evans*, 2 Idaho 651, 23 P. 232 (1890), interpreted that silence as expressing a legislative rejection of the use of preliminary hearing testimony

by the prosecution. The *Potter* Court stated:

> "[W]e find no authority for the admission in the statutes of Idaho.... [W]e find no statute of either the territory or state permitting or authorizing the use of such depositions on the trial.... [T]here is no provision of our Revised Statutes permitting the use of the depositions taken on a preliminary examination to be used against the defendant upon his trial.... If it required a statute to authorize the admission of depositions in favor of the defendant, it certainly would not be contended that depositions against him should be received without equal authority." 6 Idaho at 587–588, 57 P. at 432.

The *Potter* Court interpreted legislative silence as a rejection, saying, "[A] practice which wants the authority of law [*i.e.*, no statutes existed expressly authorizing the prosecution's use of preliminary hearing testimony], and which is in derogation of a recognized elementary right of the citizen [*i.e.*, conflicts with the confrontation clause, which had not yet been made applicable to the states], should gain no sanctity by user." *Id.* Thus, there were two reasons for the decision in *Potter:* (1) there were no statutes expressly authorizing the prosecution's use of preliminary hearing testimony, and (2) use of such testimony would violate the recognized elementary confrontation clause right of every citizen.

The confrontation clause rationale of the *Potter* decision has been annulled by the recent decision of the United States Supreme Court in *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.E.2d 597 (1980), which upheld the use of such preliminary hearing testimony. Likewise, the "absence of a statute" prong has also been abrogated by this Court's adoption of the Idaho Rules of Evidence. The Idaho Rules of Evidence have filled the void left by the statutes interpreted in *Potter*.

The public policy expressed in the Idaho Rules of Evidence regarding admission of the preliminary hearing testimony at issue is first reflected in I.R.E. 402, the general

---

**3.** The statutes at issue in *Potter* do not differ     materially from present I.C. §§ 19–3101 *et seq.*

**430**

rule regarding admission of evidence, which reads:

"All relevant evidence [*i.e.*, evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence, I.R.E. 401] is admissible except as otherwise provided by these rules or by other rules applicable in the courts of this state. Evidence which is not relevant is not admissible."

Here, the witness's preliminary hearing testimony is relevant because it tends to identify Elisondo as the perpetrator of the crime. Certainly such evidence "is of consequence to the determination of the [instant] action." I.R.E. 401. Under the general public policy expressed in I.R.E. 402, Martha's preliminary hearing testimony is admissible unless its admission conflicts with some other rule of evidence.[4]

The other inquiry into the admission of Martha's preliminary hearing testimony is that under I.R.E. 801(c), the hearsay rule.[5] Although Martha's testimony is hearsay, there is a clearly applicable exception to the hearsay rule for this type of testimony in I.R.E. 804(b)(1), which reads:

"**Rule 804. Hearsay exceptions; declarant unavailable.**— ...

"(b) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

"(1) Former testimony. Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and sim-

ilar motive to develop the testimony by direct, cross, or redirect examination."

The record is clear that the defendant was present with his counsel at the preliminary hearing and cross examined the witness, Martha. Additionally, the majority has not disturbed the Court of Appeals' holding that Martha was unavailable at trial. The remaining elements of I.R.E. 804(b)(1) were also met. Martha's preliminary hearing testimony clearly qualifies as "former testimony" because her testimony was given as a witness, under oath, at another judicial hearing (the preliminary hearing), and at that hearing Elisondo was represented by counsel and had an opportunity and a motive to develop her testimony by cross examination. Accordingly, the admission of Martha's former testimony is expressly authorized by the Idaho Rules of Evidence, thus filling the void left by the aforementioned Idaho statutes.

The Idaho Rules of Evidence, specifically Rules 402 and 804(b)(1), were adopted in 1985, when *State v. Mee, supra,* was the controlling decision. Those rules represent the present public policy regarding the admission of preliminary hearing testimony where the witness is unavailable and the defendant and his counsel were present and had the opportunity to cross examine. Rule 804(b)(1) codifies this Court's ruling in *State v. Mee, supra.* The Court's action today, in overruling *Mee,* also impliedly repeals I.R.E. 804(b)(1). Ironically, the Court does that by re-adopting the 19th century reasoning of this Court's 1899 decision in *State v. Potter, supra,* which was based upon a rationale that the legislature, by permitting a defendant to use such preliminary hearing testimony when no similar authorization was given to the state, had impliedly prohibited admission of such tes-

**4.** The phrase "other rules applicable in the courts of this state" in I.R.E. 402 would refer to the constitutional right of confrontation. "Although not specifically stated in Rule 402, it is implicit that evidence obtained in violation of the constitutionally protected rights of a party would be inadmissible under 'the rules applicable in the courts of this state.'" M. Clark, *Report of the Idaho State Bar Evidence Committee,* C 402, p. 1 (4th Supp.1985). But, as has been established above, the admission of such

preliminary hearing testimony does not conflict with the confrontation clause.

**5.** "**Rule 801. Definitions.**—The following definitions apply under this Article:

.  .  .  .

"(c) Hearsay. 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

timony proffered by the state. That earlier case found an implied policy in the statutory void. However, that void has been filled by I.R.E. 804(b)(1), which adopts a policy specifically permitting admission of the prior preliminary hearing testimony of an unavailable witness. Furthermore, I.R.E. 1102 provides that *"[s]tatutory provisions* and rules governing the admissibility of evidence, to the extent they are evidentiary and *to the extent that they are in conflict with applicable rules of Idaho Rules of Evidence, are of no force or effect."* Whatever may have been the justification for the *Potter* Court interpreting a void in the statutes as indicating a legislative preference for non-admission of this sort of evidence, an express statutory provision to that effect, if it existed, would now be preempted by I.R.E. 804(b)(1) and I.R.E. 1102. It is difficult to understand how the interpretation of a statutory void can survive the preemptive effect of I.R.E. 804(b)(1) and I.R.E. 1102 when, *a fortiori,* an express statutory provisions would be preempted.

The most current "public policy" expressed by the United States Supreme Court in interpreting the confrontation clause supports the admission of this type of evidence. The most recent "public policy" expressed by this Court, in both its decision in *State v. Mee, supra,* and in its order adopting I.R.E. 402 and I.R.E. 804(b)(1), supports the admission of this evidence. After recognizing that its decision today is contrary to the great weight of authority in both the state and federal courts, and without even acknowledging that its decision today conflicts with our own evidence rule I.R.E. 804(b)(1), the majority nevertheless proceeds to reverse the trial court and the Court of Appeals even though those two courts correctly decided this case.

The Court further states that it is applying its decision today only prospectively;

however, it reverses the conviction of the defendant Elisondo in this case. In *State v. Mee, supra,* the Court recognized that it was overturning existing precedent and stated that its decision was to be applied prospectively only. In *Mee,* the Court did not apply its ruling to the parties in that case, but rather reversed Mee's conviction because under the law that existed prior to the Court's decision in *Mee* the defendant Mee could not have been convicted.[6] The Court in this case again states, as it did in *State v. Mee,* that its decision is to be applied only prospectively, but nevertheless applies the decision to this case and reverses the conviction of the defendant Elisondo even though, under the law prior to today's decision, Elisondo was properly convicted. If the prospective decision in *State v. Mee* was not applied to the litigants before the Court in that case, then the prospective decision in this case should not be applied to the litigants before the Court today, and the judgment of conviction should be affirmed. The unequal treatment for the litigants in this case as compared to *State v. Mee,* resulting from the prospective overrulings which have occurred now in both cases, hardly comports with the ideal of equal justice under law.

The judgment of the trial court and the decision of the Court of Appeals should be affirmed.

**6.** In 102 Idaho, at page 483, the Court in *Mee* recognized that it was overturning existing precedent and stated:

"To apply a new appellate ruling in passing upon the validity of an earlier conviction in such circumstances as present here would be the equivalent of applying an ex post facto law in violation of both federal and state constitutions. [*State v. Byers,* 102 Idaho 159], 627 P.2d [788] at 795 [1981]. Thus, the rule set forth by this Court herein is to be applied prospectively only."