795 P.2d 867

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Jody R. GORD, Defendant–Appellant.**

**No. 18056.**

Supreme Court of Idaho.

July 17, 1990.

ORDER DENYING PETITION
FOR REVIEW

The Appellant having filed a PETITION FOR REVIEW on May 21, 1990, and a supporting BRIEF on June 4, 1990, seeking review of the Opinion of the Court of Appeals filed May 1, 1990; therefore, after due consideration,

IT IS HEREBY ORDERED that Appellant's PETITION FOR REVIEW be, and hereby is, DENIED and the dissent on denial of the Petition for Review be, and hereby is, RELEASED.

BISTLINE, Justice, dissenting.

For whatever reason, and none comes to mind which has any validity, the Court by a majority vote eschews the opportunity to review the decision and opinion of the Court of Appeals, 118 Idaho 15, 794 P.2d 285 (1990). The Court of Appeals, in what is clearly a policy-making decision has held that the legislature's I.C. § 19–853 does not require law enforcement officials to notify the public defender that they have a defendant in custody, in Gord's case incarcerated; and, the Court of Appeals has also held that law enforcement officers are free to interrogate the suspect defendant once they obtain a valid waiver of such detainee's or arrestee's *Miranda* rights.

The Court of Appeals recognized the full impact of its decision; that is not open to doubt or debate. The Court of Appeals' opinion sets out most of the pertinent provisions of I.C. § 19–853(a)(1) and (2), but has failed in (a) to add: *"or who is confined."* The opinion of the Court of Appeals should read:

Idaho Code § 19–853 states in relevant part:

(a) If a person who is being detained by a law enforcement officer, *or who is confined* or who is the subject of hospitalization proceedings ... is not represented by an attorney ... upon commencement of detention ... shall:

(1) clearly inform him of his right to counsel and of the right of a needy person to be represented by an attorney at public expense; and

(2) if the person detained or charged does not have an attorney, notify the public defender ... that he is not so represented.

The Court of Appeals dodged the real issue, that of the duty of the law enforcement officers to notify the public defender that they had *detained* Jody Gord, a youth of eighteen years, and in fact *confined* him, and kept him in confinement and subject to their unfettered will and temperament. The record on appeal contains incident and arrest reports which disclose that Jody Gord and three other individuals were apprehended between 0220 hours and 0230 hours (2:20 a.m. and 2:30 a.m.), that Gord and one other person were handcuffed and told that they were under arrest for burglary, and all four were transported to the booking area. Dent, Gord, and Nixon were placed in separate cells. R. at 8–15. The officers' reports are quite terse as to getting a statement out of Gord. Moreover, it is difficult to comprehend from the record which officers made which report. The affidavit for initial determination of probable cause states only that: "The basis for said arrest is contained within the attached accurate copies of documents on file [with the Nez Perce County Sheriff's office] and are incorporated herein by reference." R. at 5. Also at page 5 of the Record, is a "Constitutional Rights Warning" signed by a Jody R. Gord, and the time shown is 0420 (4:20 a.m.). It appears to be in the usual form. It is also signed in two places by Officer Don Taylor.

The prolonged incarceration of Jody Gord until 4:20 a.m., is reminiscent of the scenario in *State v. Monroe*, 101 Idaho 251, 611 P.2d 1036 (1980):

> Defendant was handcuffed and searched and again asked whether he wanted to make a statement, and he again said that he would after he had been advised by his attorney. At approximately 6:30 a.m. the defendant was transported to the Canyon County Sheriff's Office, Criminal Investigation Division (CID).
>
> Detective Anderson and Prosecuting Attorney Morfitt then discussed the need for a search warrant to photograph the inside of the house and collect evidence. Anderson then proceeded to photograph the outside of the house.

Jim Muller, another occupant of the Monroe residence, returned home at approximately 8 a.m. and found several police cars outside, and several officers inside the house. He was informed of the events and was transported at about 8:30 to the CID, where the defendant was being held.

In the meantime, at approximately 5:30 a.m. a Sheriff's deputy went to the home of Vernita Monroe (the defendant's mother who lived separately from her husband and son), awakened her, and asked her to come down to the CID. There she talked with Officer Prescott and was told that her husband was dead and that the officers suspected foul play. She was then told for the first time that her son might be involved, and that he was being held upstairs. Mrs. Monroe's testimony, uncontroverted as we read the record, is as follows:

> Q. Are you sure that is what he asked you?
> A. Yes. I said, "Well, I cannot afford to hire an attorney for Andy." I said, "He is entitled to an attorney, isn't he?" And Prescott said, "Yes, we will get him an attorney." And I said, "Well, shouldn't he have a right to an attorney before he is questioned?" And he said, "Well, it would make it a lot simpler if we could get him to talk to us." And he said would I talk to Andy and see if I could get Andy to talk to them."

After the defendant had some conversation with his mother, Detective Prescott asked if he were ready to give a statement. He said, 'I want a lawyer before I talk to you.' Detective Anderson entered the room shortly thereafter, and asked if the defendant would talk. The defendant said he would, and began asking Anderson why Muller, whom he could see just outside the room where he was being questioned, was there. Anderson testified as follows:

> I told him that we were going to be talking to everybody that was remotely involved in this situation and he indicated that Mr. Muller did not know anything about it, did not have any-

thing to do with it; something of that nature, and I then asked him if he would like to give me his side of it or what did take place and he said, "Yes."

Anderson later testified that he was not aware that the defendant has previously requested an attorney.

Defendant then executed a full written *Miranda* waiver and was interviewed by Anderson, first informally, and then on tape.

*Monroe*, 101 Idaho at 253–54, 611 P.2d at 1038–39. The majority in that case held that Monroe's confession was not susceptible to attack because he had signed a *Miranda* waiver. However, the United States Supreme Court vacated the judgment of conviction and remanded the case to this Court for further consideration in light of *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). On remand this Court properly concluded, in accordance with the views of *Edwards v. Arizona* and the corresponding views of Bistline, J., who had dissented from upholding the admissibility of Monroe's confession, that the confession had to be suppressed, and a new trial be directed at which the trial court would suppress.

When one considers that both defendants, Monroe and Gord, waived their *Miranda* rights after being subjected to interrogation after having been confined for quite some time, it is not readily seen that there is a substantial distinction between the two sets of circumstances. But, conceding that there is some distinction, and that the waiver of Gord's *Miranda* rights was properly obtained, such does not dictate the conclusion that the state is absolved from the statutorily imposed obligation to notify the public defender. There is no substantiation for the Court of Appeals' conclusion *that waiver of the Miranda rights suspended the obligation to notify the public defender*. It might just as readily have been said by the Court of Appeals that a waiver of *Miranda* rights also operates to suspend the operation of I.C. § 19–515, which mandates that a defendant must in all cases be taken before a magistrate without unnecessary delay. Additionally, it might just as readily have

been said that waiver of *Miranda* rights also vitiates the requirement of *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975):

> When the stakes are this high, the detached judgment of a neutral magistrate is essential if the Fourth Amendment is to furnish meaningful protection from unfounded interference with liberty. Accordingly, we hold that the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest.

*Gerstein*, 420 U.S. at 114, 95 S.Ct. at 863. That is not to say that these circumstances did present an extended restraint of Gord's liberty, but it is to say that waiver of certain *Miranda* rights is not a blanket which includes other rights, one of which is that the officers are under a duty to notify the public defender that they have taken a person into custody. That duty has aught to do with the fact that the person in custody, for whatever reason and reacting perhaps to being under the domination of police officers who want him to talk, agrees to sign a *Miranda* waiver. It is also to be noted that the Court of Appeals succumbed to the supplications of the State's brief:

> The defendant has made no allegation that any of his constitutional rights were violated in the course of obtaining his statements concerning the burglary. He has argued that suppression of his confession is required on statutory grounds alone. He asserts that the provisions of Idaho Code § 19–853 concerning notification of the public defender require suppression of statements made by a person under arrest who does not have an attorney, unless the police have first notified the public defender. The state submits that this argument reflects a misunderstanding of the content and purpose of the statute. The statute's purpose is simply to provide the means of implementing the decisions of the United States Supreme Court concerning a defendant's right to counsel. The statute does not convey any additional right, nor

is it intended to provide a separate exclusionary rule. Therefore, the statute cannot be the basis for suppression of the defendant's statements in this case.

. . . .

As *Miranda* made clear, a defendant who is in custody also enjoys a right under the fifth amendment to consult with counsel prior to questioning and to have counsel present during any questioning. As the record shows, the defendant was informed of this right and waived it.

Respondent's Brief, 5–9.

Another case, *Moran v. Burbine*, 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986), discussed in the State's brief, shows how far it would go in emasculating the rights accorded to arrested persons by the Idaho legislature, which *are in addition* to the constitutional rights as pronounced by the High Court:

> [T]he petitioner had been arrested for burglary. Later on the day of the arrest, his sister contacted a lawyer who was representing him on an unrelated case. An associate of that lawyer called the police department that night, ascertained that the petitioner was still being held, and stated that she would act as his legal counsel if the police intended to place him in a lineup or question him. She was told that the police would not be doing so that night. Less than an hour later, police from another city began questioning the defendant about a murder that had occurred several months earlier. The defendant waived his *Miranda* rights and confessed to the murder. The police did not inform the defendant of the lawyer's telephone call earlier that night.
>
> The Court rejected the idea that the failure of the police to inform the defendant of the call, or the misleading information given to the lawyer, required suppression of the confession. 'Events occurring outside of the presence of the suspect and entirely unknown to him surely can have no bearing on the capacity to comprehend and knowingly relin-

quish a constitutional right.' 475 U.S. at 422, 106 S.Ct. at 1141.

. . . .

> The statute upon which the defendant relies is intended to implement constitutional requirements, not to extend them. The defendant executed a valid waiver of his fifth amendment right to counsel; in so doing, he also waived any right to counsel that he had under the statute. The police were not obligated to place the defendant in communication with the public defender against his will. The statute provides no basis for the exclusion of the defendant's statements.

Respondent's Brief, 13–14.

Contrariwise, one of Idaho's most able trial judges addressed this same subject in *State v. LaMere*, 103 Idaho 839, 874–75, 655 P.2d 46, 81–82 (1982). Judge Towles, in entering a suppression order, wrote as to Idaho's statutory procedures:

> Contrary to the State's contention I.C. 19–853 clearly pertains to any defendant, whether needy or not, and is one of the warnings mandated by *Miranda.* The Idaho statute adds an *additional requirement to the Miranda case* and was designed to ensure the fact that the warning could be proven as well as the acknowledgment and understanding by the defendant.
>
> At any time that a person is arrested or in custody and is questioned prior to arraignment before the Court, it is absolutely imperative that the police officers comply with Subsection (e) of I.C. 19–853.
>
> As to the statement taken from the defendant at or about 4:35 p.m., on October 23rd, 1978, it is apparent that the *Miranda* Warning and acknowledgment of the warning was contained on the taped statement and that the tape of such statement was filed with the Court next concerned at the time of the suppression hearing.
>
> However, it certainly would be more preferable for a written *Miranda* Warning to be acknowledged in accordance with the statute to further support the voluntariness of such statement. The original interview by the Chief of Police

and Officer Wadsworth, of course, did not comply with the statutory requirement in any fashion, and as a result, such statement must be suppressed.

*State v. Elisondo,* 114 Idaho 412, 426–27, 757 P.2d 675, 689–90 (1988) (emphasis added). In addition to repeating what Judge Towles had written, the occasion was used to add some additional thoughts:

But there is the requirement of state law, I.C. § 19–853, that a person who has been merely detained by an officer and is not represented by an attorney must be informed by that officer of his right to counsel, and if a needy (indigent) person, of his right to be represented by an attorney at public expense.

More than that, however, the officer must thereupon notify either the court or the public defender if there is one, and if there is, then it must be the public defender who is notified. If there be none, then the 'or as the case may be' of § 19–853(a)(2) comes into play, because it will then become the obligation of the court to inquire into indigency before appointing an attorney. The public defender, of course, can and should satisfy himself with the indigency of the detained or in-custody suspect. Only where a detainee or custodial suspect has *not* answered affirmatively to the officer's inquiry does it become necessary for the court to make the proper inquiry when the detainee-suspect first appears.

It is beyond cavil that the 'state should provide counsel *at the earliest feasible time* after an accused is taken into custody.' *State v. Wuthrich,* 112 Idaho 360, 362, 732 P.2d 329, 331 (Ct.App.1987) (emphasis added) (citing Task Force on Providing Services, *Providing Defense Services, 1 A.B.A. Standards for Criminal Justice* § 5–5.1 (1979)). The mandate of the statute is clear: the public defender should not be kept at bay until a *formal* indigency hearing has been held pursuant to I.C. § 19–854. A public defender should be allowed, nay, encouraged, to interview indigents who have requested counsel prior to *any* court appearance or formal indigency hearing.

. . . .

All that needs to be done, however, is follow the statute, and notify the public defender—who will then assume his statutory function of providing representation. Importantly, all of this should be done before a magistrate does any more in the case other than ascertain the defendant's true name, and set a date for arraignment. This discourse assumes, of course, that the accused detainee/suspect is charged with a serious crime as also defined by the legislature.

Obviously the early interposition of the public defender between the detained suspect and the prosecutor will have a salutary effect on all concerned, and moreover remove the magistrate from the unenviable position of having to explain to an accused what is entailed in being charged and prosecuted. In all likelihood the presence of the public defender may result in some unclogging of the felony trial calendar when it appears that both sides can go away happy on the agreement that the accused will plead guilty to a misdemeanor.

It might be argued that it is a waste of judicial resources to have the public defender involved at such an early stage where it may be later found at a formal hearing that the accused is not, in fact, indigent. Those cases, methinks, are infrequent. More important, such a consideration is *de minimis* in light of the prejudice resulting from the absent, but not unwilling, service of a public defender at the initial appearance. Moreover, bond should not be set without a public defender. The Idaho Constitution, art. 1, § 6 guarantees that excessive bail 'shall not be required.' The lay person confronted by a seasoned prosecutor is much less likely to be released on personal recognizance—and more likely to have an excessive bail imposed—without the aid of counsel. Moreover, unrepresented indigents are also prejudiced at an indigency hearing when unwitting admissions are made as to one's prior criminal record—which is an inquiry of the court as a matter of course. Those lucky

enough to afford a private attorney do not suffer a similar fate.

To be certain, if a plea is made at an initial appearance, which is often the case in misdemeanor cases, an indigent has the right to counsel. *White v. Maryland*, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963). Again, the truth seeking process is not served by excluding the public defender.

'Assembly line' justice is inconsistent with the Idaho criminal system. Otherwise, '[s]uddenly it becomes clear that for most defendants in the criminal process, there is scant regard for them as individuals. They are numbers on dockets, faceless ones to be processed and sent on their way.' *Argersinger v. Hamlin*, 407 U.S. 25, 35, 92 S.Ct. 2006, 2011, 32 L.Ed.2d 530 (1972). Hobbling a willing public servant such as the public defender would be admirable if mere efficiency of disposition was the goal. However, we should avoid the false economy of the assembly line which elevates efficiency over justice.

Back of it all and not to be forgotten are the statutory requirements of the code which require that a suspect/accused placed in custody must be forthwith taken before a magistrate, and a charge against him be laid before the magistrate. I.C. §§ 19–601 through 19–608, 19–615. Forthwith means forthwith, not tomorrow, and not when convenient. I.C. § 18–702 provides a penalty for willful delay on the part of an officer.

*State v. Elisondo*, 114 Idaho at 425–26, 757 P.2d at 688–89.

In conclusion, the concise and well-written brief of counsel for Gord provides a quotable statement from *Moran v. Burbine:* "Nothing we say today disables the states from adopting different requirements for the conduct of its employees and officials as a matter of state law. *Moran*, 475 U.S. 412, 428, 106 S.Ct. 1135, 1144, 89 L.Ed.2d 410, 425 (1986)." Appellant's Brief, 4. A similar statement comes from the Idaho case of *State v. Culbertson*, 105 Idaho 128, 666 P.2d 1139 (1983):

By the enactment of I.C. § 19–853, the Idaho legislature has codified the requirements laid down by the United States Supreme Court in *Miranda* [*v. State of Arizona* ], 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). However, the legislature, in the enactment of the statute, has gone beyond the United States Constitutional requirements enunciated in *Miranda* and has required that a person accused or detained be given such *Miranda* warnings in writing and that the receipt of the warning should be acknowledged. *Culbertson*, at 131, 666 P.2d 1139.

Appellant's Reply Brief, 6.

It is respectfully submitted that no matter what conclusion this Court might reach, there is good reason to grant review so that five members of this Court, rather than one, will decide if we are indeed willing to let the Court of Appeals set a policy which takes away from those citizens, who are not financially well-endowed but charged with crimes, the rights heretofore bestowed upon them by the Idaho legislature.