**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 35540**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2009 Opinion No. 67 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: October 13, 2009 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| TIM CARL MANTZ, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Second Judicial District, State of Idaho, Latah County. Hon. John R. Stegner, District Judge.

Judgment of conviction and sentence, <u>affirmed</u>.

Whitney & Whitney, LLP, Moscow, for appellant. Thomas W. Whitney, argued.

Hon. Lawrence G. Wasden, Attorney General; Rebekah A. Cudé, Deputy Attorney General, Boise, for respondent. Rebekah A. Cudé, argued.

---

GRATTON, Judge

Tim Carl Mantz appeals from the judgment and conviction entered upon a jury verdict finding him guilty of aggravated assault, Idaho Code §§ 18-901, 905, and 906, which sentence was enhanced for use of a firearm pursuant to I.C. § 19-2520. Mantz contends that his right to confrontation under both the United States and Idaho Constitutions was violated when the district court admitted preliminary hearing testimony of an unavailable witness.

**I.**

**FACTS AND PROCEDURAL BACKGROUND**

Mantz was charged by criminal complaint with aggravated assault. The complaint alleged that Mantz intentionally fired a handgun near the head of Karl Hoidal and verbally threatened him. Hoidal testified at the preliminary hearing; however, prior to trial Hoidal died in an unrelated accident. The State filed a motion in limine requesting admission of Hoidal's preliminary hearing testimony at trial asserting that the testimony met the requirements for admission under I.C. § 9-336, Idaho Rule of Evidence 804(b)(1), and the Confrontation Clause

1

of the Sixth Amendment. Mantz filed a cross-motion objecting to admission of Hoidal's preliminary hearing testimony. The district court granted the State's motion. At trial, an audio recording of Hoidal's preliminary hearing testimony was played for the jury and a written transcript was provided. However, the jury was not permitted to take the recording or the transcript to the jury room. The jury found Mantz guilty of aggravated assault, and the district court subsequently entered a judgment of conviction and imposed sentence. Mantz appeals.

## II.

## ANALYSIS

Mantz contends that the district court violated his right to confrontation under the Sixth Amendment to the United States Constitution by admitting Hoidal's preliminary hearing testimony at trial.[1] Mantz argues that the decision of the United States Supreme Court in *Crawford v. Washington*, 541 U.S. 36 (2004), precludes admission of Hoidal's preliminary hearing testimony. This claim presents a question of law over which this Court exercises free review. *State v. O'Neill*, 118 Idaho 244, 245, 796 P.2d 121, 122 (1990).

The Sixth Amendment's Confrontation Clause, made applicable to the states through the Fourteenth Amendment,[2] provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." Prior to *Crawford*, the admission of hearsay evidence did not violate the Confrontation Clause where: (1) the prosecution demonstrated that the declarant whose statement it wished to use was unavailable; and (2) the trial court found that the statement possessed adequate "indicia of reliability." *Ohio v. Roberts*, 448 U.S. 56, 65-66 (1980). Reliability was established when the statement: (1) fell within "a firmly rooted hearsay exception"; or (2) possessed "particularized guarantees of trustworthiness." *Id.* at 66. After engaging in an extensive discussion of the history behind the Confrontation Clause, the *Crawford* Court determined that the "indicia of reliability" test articulated in *Roberts* had departed from the original meaning of the Confrontation Clause.

---

[1] Mantz also contends that his confrontation rights under the Idaho Constitution were violated. As stated in *State v. Sharp*, 101 Idaho 498, 502, 616 P.2d 1034, 1038 (1980), "Idaho's Constitution does not contain a confrontation clause equivalent to that of the United States Constitution." Mantz does not provide argument as to why greater rights should be afforded under the Idaho Constitution than under the United States Constitution. Therefore, the issue will be analyzed solely under the United States Constitution.

[2] *Pointer v. Texas*, 380 U.S. 400, 403 (1965).

*Crawford*, 541 U.S. at 42-60.  The ultimate holding of *Crawford* purported to return to the historical roots of the Confrontation Clause, wherein the Court relied upon a distinction between testimonial and nontestimonial statements:

> Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law--as does *Roberts*, and as would an approach that exempted such statements from Confrontation Clause scrutiny altogether.  Where testimonial evidence is at issue, however, the Sixth Amendment demands what the common law required:  unavailability and a prior opportunity for cross-examination.

*Crawford*, 541 U.S. at 68.

Most of the post-*Crawford* debate has centered on the definition of the term "testimonial."  While the Court did not announce a comprehensive definition of "testimonial," the Court stated that "whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Crawford*, 541 U.S. at 68.  In this case, Hoidal's testimony was "prior testimony at a preliminary hearing" and thus is "testimonial."  Regarding testimonial evidence, "the Sixth Amendment demands what the common law required:  unavailability and a prior opportunity for cross-examination." *Id.*  There is no dispute that Hoidal was unavailable and, thus, the issue before this Court centers on the requirement of a prior opportunity for cross-examination.

In *Crawford*, the defendant's wife witnessed her husband stab a man but was unavailable at trial due to the marital privilege.  The Court allowed the State to play the statement she made to the police, which arguably contradicted her husband's theory of self-defense.  Thus, the case dealt with statements made to the police and involved a situation where the defendant had no opportunity to cross-examine.  Here, Mantz received an opportunity and did in fact cross-examine Hoidal at the preliminary hearing.  However, Mantz contends that his opportunity was not "adequate" under *Crawford*.  The statement in *Crawford* requiring "a prior opportunity for cross-examination," does not specifically reference the adequacy of the opportunity for cross-examination.  However, *Crawford* referenced *Mattox v. United States*, 156 U.S. 237, 244 (1895), which held that a statement made at a prior trial is admissible in a subsequent trial where the defendant had an "adequate opportunity to confront the witness," and concluded that its "later cases conform to *Mattox*'s holding that prior trial or preliminary hearing testimony is admissible

only if the defendant had an adequate opportunity to cross-examine." *Crawford*, 541 U.S. at 57.[3] Therefore, the defendant must have had an adequate opportunity to cross-examine the unavailable witness.[4]

*Crawford* did not specifically address what constitutes an "adequate" opportunity for cross-examination, but the cases the Court cited, *Pointer*, *Green*, and *Mancusi*, do provide some guidance in assessing whether an adequate opportunity has been afforded. The first indication of an adequate opportunity to cross-examine is representation by counsel. Where a defendant is not "represented by counsel who [is] . . . given a complete and adequate opportunity to cross-examine," the Confrontation Clause is generally violated. *Pointer*, 380 U.S. at 407. Therefore, because counsel provides the means for "full and effective cross-examination," *California v. Green*, 399 U.S. at 158, the absence of counsel will likely yield situations where there is less than adequate or no cross-examination at all. *See Pointer*, 380 U.S. at 401-402.

The Court in *Green*, stated that "[c]onfrontation . . . forces the witness to submit to cross-examination, the 'greatest legal engine ever invented for the discovery of truth.'" *Green*, 399 U.S. at 158 (quoting 5 Wigmore § 1367). As cross-examination leads to the discovery of truth, limitations on cross-examination may impede that discovery. A factor considered in *Green* was that "counsel [did] not appear to have been significantly limited in any way in the scope or nature of his cross-examination." *Green*, 399 U.S. at 166. Therefore, significant limitation on the scope and extent of cross-examination in the prior testimony may result in an inadequate opportunity for cross-examination.

In *Mancusi*, the defendant claimed his right to confront witnesses was infringed by admission of testimony from his first trial in the re-trial. The defendant asserted that, since his counsel in the first trial was appointed only four days before trial, a finding that counsel's cross-examination was constitutionally inadequate was mandated. *Mancusi*, 408 U.S. at 214. The Court indicated that counsel could and did effectively cross-examine prosecution witnesses. *Id.*

---

[3]     Citing *Mancusi v. Stubbs*, 408 U.S. 204, 213-216 (1972); *California v. Green*, 399 U.S. 149, 165-168 (1970); and *Pointer v. Texas*, 380 U.S. 400, 406-408 (1965).

[4]     We note that I.C. § 9-336 also requires "an adequate opportunity to prepare and cross-examine the proffered testimony."

The Court then referred to a list of questions that the defendant's counsel said he would have asked had the witness been present at the second trial, and ultimately stated:

> No one defense counsel will ever develop precisely the same lines of inquiry or frame his questions in exactly the words of another, but from this record counsel at the retrial did not in his proffer show any new and significantly material line of cross-examination that was not at least touched upon in the first trial.

*Mancusi*, 408 U.S. at 215. Therefore, the identification of a new and significantly material line of cross-examination that was not "touched upon" in the first trial or hearing is a consideration in determining whether a prior cross-examination was inadequate.[5] The considerations of representation by counsel, significant limitation in cross-examination, and articulation of a new and significantly material line of examination not touched upon in the initial testimony, are illustrative and not meant to be exhaustive or exclusive in the determination of the adequacy of cross-examination under the Confrontation Clause.

As an initial matter, Mantz argues that, regardless of the application of the above considerations, preliminary hearings in Idaho, by their very nature, do not provide an adequate opportunity to cross-examine. Mantz contends that this Court should adopt a bright line rule that the opportunity for preliminary hearing cross-examination is always insufficient to satisfy the Confrontation Clause. In support of this argument, Mantz cites *People v. Fry*, 92 P.3d 970 (Colo. 2004), and *State v. Stuart*, 695 N.W.2d 259 (Wisc. 2005). The *Fry* and *Stuart* courts relied upon specific state law which limited the nature of preliminary hearings. Both courts essentially expressed similar concerns regarding the adequacy of the opportunity to cross-examine at a preliminary hearing, including that: (1) a preliminary hearing is limited to a finding of probable cause, rather than reasonable doubt as at trial; (2) the preliminary hearing is not meant to become a mini-trial due to its limited purpose in making a determination of probable cause; and (3) the court may prohibit cross-examination into areas of credibility, trustworthiness, or motives to testify falsely due to the limited scope of the preliminary hearing. *See Fry*, 92 P.3d

---

[5] Idaho Rule of Evidence 804(b)(1) provides for admission of prior testimony if the party against whom the testimony is offered had "an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." In determining whether a new and significantly material line of cross-examination has been identified, the court may look to whether the party had a similar motive relative to the examination in the preliminary hearing and at trial. *See State v. Ricks*, 122 Idaho 856, 840 P.2d 400 (Ct. App. 1992).

at 976-978; *Stuart*, 695 N.W.2d at 265-267.[6] The *Fry* court determined that public policy, based upon these practical concerns, warranted a blanket prohibition of preliminary hearing testimony where the witness is unavailable at trial. *Fry*, 92 P.3d at 978. Mantz argues that, based upon the same reasoning, this Court should also adopt a blanket prohibition.

Idaho has a long history regarding public policy as to the admission of preliminary hearing testimony at trial. In *State v. Elisondo*, 114 Idaho 412, 414, 757 P.2d 675, 677 (1988), the Supreme Court, citing practical concerns similar to those stated in *Fry* and *Stuart*, precluded introduction of preliminary hearing testimony of a witness not present at trial. At the time, the legislature had not specifically authorized the use of such testimony at trial. The Court concluded:

> We emphasize that our decision today is not based on an asserted violation of the confrontation clause of the United States Constitution, but rather the independent right of a state to exercise its own authority in this area, and our view that public policy considerations require such decision.

*Elisondo*, 114 Idaho at 415, 757 P.2d at 678.[7] The year following issuance of the decision in *Elisondo*, the legislature responded. The legislature expressly countermanded the *Elisondo* statement of public policy regarding the admission of preliminary hearing testimony:

> It is the legislature of the State of Idaho that declares what the public policy of the state shall be. In examining those considerations, it is the opinion of the legislature that the admission of previously recorded testimony of a preliminary hearing should be admissible under the safeguards contained within section 9-336, Idaho Code. The legislature finds that it is against public policy to adopt a per se rule excluding preliminary hearing testimony from a subsequent criminal proceeding. The legislature finds that such an exclusion provides an incentive to a criminal defendant to take steps to prevent a witness from testifying at trial. It is the policy of the state that all relevant and admissible evidence should be usable in criminal proceedings.

S.L. 1989, ch. 51, section 1. The legislature also enacted I.C. § 9-336, which provides:

---

[6]    In both cases, the State agreed with the defendant that the preliminary hearing did not provide an adequate opportunity to cross-examine, but argued that admission of the preliminary hearing testimony was harmless error. Here, however, the State does not concede that Mantz did not have an adequate opportunity to cross-examine.

[7]    *Elisondo*, however, overruled *State v. Mee*, 102 Idaho 474, 632 P.2d 663 (1981), in which the Court had determined that introduction of preliminary hearing testimony was allowable under the Confrontation Clause pursuant to a *Roberts* analysis.

> Prior to admitting into evidence recorded testimony from a preliminary hearing, the court must find that the testimony offered is:
> 1. Offered as evidence of a material fact and that the testimony is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and
> 2. That the witness is, after diligent and good faith attempts to locate, unavailable for the hearing; and
> 3. That at the preliminary hearing, the party against whom the admission of the testimony is sought had an adequate opportunity to prepare and cross-examine the proffered testimony.

By acknowledging the *Elisondo* opinion, the legislature was aware of the nature of a preliminary hearing in Idaho and its inherent limitations, yet the legislature determined that it was against public policy to adopt a per se rule excluding preliminary hearing testimony. Additionally, in 1985, I.R.E. 804(b)(1) was adopted to provide a hearsay exception allowing introduction of former testimony of an unavailable witness. I.R.E. 804(b)(1) was not cited by the *Elisondo* Court, likely because the trial in the *Elisondo* matter preceded its adoption. In *State v. Ricks*, 122 Idaho at 863, 840 P.2d at 407, this Court stated that "we cannot adopt a *per se* rule that preliminary hearing testimony is inadmissible in light of the explicit statement of policy in I.C. § 9-336 and the implicit statement of policy in I.R.E. 402 and 804(b)(1)." Thus, public policy considerations, under our specific state law regarding preliminary hearing testimony, do not support the imposition of a blanket prohibition under the Confrontation Clause.[8]

*Crawford* does not dictate a countervailing public policy or per se preclude preliminary hearing testimony under the Confrontation Clause. Prior to *Crawford*, in *Roberts*, the Court had held that preliminary hearing testimony of a witness who is absent at trial is admissible. *Roberts*, 448 U.S. at 67-73. The *Crawford* Court acknowledged that the ultimate result of *Roberts* had been "faithful to the original meaning of the Confrontation Clause," but took issue with its rationale, the "indicia of reliability" test. *Crawford*, 541 U.S. at 58-60. The *Crawford* Court also stated that "preliminary hearing testimony is admissible only if the defendant had an adequate

---

[8] Mantz also argues that preliminary hearing cross-examination is inadequate due to the jury's inability to observe the witness's demeanor, which observation would aid the jury in assessing the witness's credibility. While jury observation is certainly an important consideration, it is not essential to satisfy the Confrontation Clause. If that were the case, all but video-taped out-of-court statements would be excluded. *Crawford* does not so demand.

opportunity to cross-examine." *Crawford*, 541 U.S. at 57. Thus, *Crawford* did not impose a blanket prohibition of preliminary hearing testimony.

Contrary to *Fry* and *Stuart*, the majority view post-*Crawford* holds that preliminary hearing testimony of an unavailable witness is admissible.[9] In *State v. Mohamed*, 130 P.3d 401 (Wash. App. 2006), the court first noted that *Crawford* did not change the well-established rule that "[w]hen a witness is unavailable to testify at trial, her testimony at a preliminary hearing or previous trial is admissible, assuming a proper opportunity for cross-examination at the previous hearing." *Mohamed*, 130 P.3d at 403. The court distinguished *Fry* on the basis that Mohamed's pretrial hearing was not similarly limited since the witness's credibility was at issue and the court did not curtail Mohamed's cross-examination. *Id.* at 404. The court ultimately determined that "[the unavailable witness's] sworn testimony at the pretrial hearing was subject to unfettered and properly motivated questioning about her out-of-court statements." *Id.* at 406. *See also State v. Henderson*, 136 P.3d 1005 (N.M. 2006).

In *State v. Aaron*, 218 S.W.3d 501 (Mo. 2007), the court noted that its state law, as in Idaho, allowed for admission of preliminary hearing testimony when subject to cross-examination. *Id.* at 507. Regarding the adequacy of the cross-examination itself, the court held that mere brevity of cross-examination did not constitute an inadequate opportunity to cross-examine. *Id.* at 507-508. The court noted that even brief cross-examination satisfied the confrontation rights, "absent the showing of some 'new and significantly material line of cross-examination' that was not explored in the prior examination." *Id.* at 508 (quoting *Mancusi*, 408 U.S. at 215). The court in *State v. Stano*, 159 P.3d 931, 945 (Kan. 2007) commented that the *Fry* decision was "extremely state-law specific," and noted:

> In Kansas, a criminal defendant is not barred from cross-examining witnesses in a preliminary hearing regarding the witness' credibility. More importantly, this court has specifically held on numerous occasions that the requirements of the Confrontation Clause are satisfied when a defendant *has cross-examined* an unavailable witness at the time of the preliminary hearing.

*Id.* (citation omitted and emphasis added). The court further determined that the defendant's "interest and motive in questioning [the witness] at the preliminary hearing and at his trial *were*

---

[9] The majority view pre-*Crawford* also held that preliminary hearing testimony was admissible at trial under appropriate circumstances. *See Ricks*, 122 Idaho 862, 840 P.2d 406.

similar--to prove his innocence by discrediting [the witness's] written statement to the police." *Id.* (emphasis in original).

The majority of courts do not condone a blanket prohibition of preliminary hearing testimony of an unavailable witness. Rather, preliminary hearing testimony is admissible as long as the defendant had an adequate opportunity to cross-examine, which is determined on a case-by-case basis. Similarly, this Court in *Ricks*, albeit in the context of applying I.C. § 9-336 and I.R.E. 804(b)(1), held that "a case-by-case approach is the better way to determine whether the district court was correct in ruling that the preliminary hearing testimony was admissible." *Ricks*, 122 Idaho at 863, 840 P.2d at 404. We conclude, as have the majority of courts addressing this issue, that the case-by-case approach should also apply to the Confrontation Clause analysis.[10]

In *Green*, the Court stated that preliminary hearing testimony of an unavailable witness will generally be admissible where the testimony is "given under circumstances closely approximating those that surround the typical trial." *Green*, 399 U.S. at 165. Circumstances approximating trial include witness testimony under oath, representation by counsel, an opportunity to cross-examine the witness, and the proceedings conducted before a judicial tribunal capable of providing a judicial record of the proceedings. *Id.* In this instance, Hoidal testified under oath at the hearing. Mantz was represented by capable counsel who engaged in extensive cross-examination. The preliminary hearing was conducted before a magistrate judge and an audio recording and a written transcript were made of that proceeding. We turn, then, to the determination of whether Mantz had an adequate opportunity to cross-examine Hoidal at the preliminary hearing.

In this case, the prosecutor developed on direct examination of Hoidal the basic facts supporting the charges against Mantz. Hoidal testified that he and a group of friends decided to go on a four-wheeler ride. Along the way, one of Hoidal's friends ran into him, which damaged Hoidal's four-wheeler. The group stopped not far from where the accident occurred, and Hoidal testified that they heard gunshots. Due to the condition of Hoidal's four-wheeler, he turned

---

[10]     Mantz argues that the practical effect of using a case-by-case approach will be longer, more laborious and contentious preliminary hearings. This argument is unpersuasive. The case-by-case approach, has been the law for well over a decade under I.C. § 9-336 and I.R.E. 804(b)(1).

around to return to the point of departure. Hoidal testified that he rounded a corner, slid on the ice, and sideswiped a pickup. Hoidal testified that the driver of the pickup, later identified as Mantz, told him "to freeze right there and get off [his] four wheeler." Hoidal testified that Mantz questioned him as to who he was, why he was there, and who he was with. Hoidal told Mantz who he was and noticed that Mantz had a pistol in his right hand. Mantz continued questioning Hoidal. Hoidal testified that Mantz then fired a shot past his head and also threatened him saying "the next one's in [you]." Hoidal testified that they talked about the situation, shook hands, and he departed.

On cross-examination, among other things, defense counsel established that Hoidal had been drinking alcohol on the night of the incident and challenged him on the number of drinks. Hoidal acknowledged that it was illegal for him to drink alcohol as he was underage. Defense counsel inquired as to the regularity of Hoidal's drinking and whether he drank every weekend. The prosecutor objected on relevancy and the magistrate overruled the objection. Counsel elicited testimony from Hoidal that he had trouble with his parents because of his drinking and that he had recently been charged with a DUI. Hoidal acknowledged that several others on the ride were drinking. Defense counsel questioned Hoidal regarding his knowledge of the ownership of the property. Hoidal admitted that "part of the adventure of going on this night ride was crossing property that [he] wasn't supposed to be on." Defense counsel asked Hoidal whether he owned firearms and whether he carried them on four-wheeler rides. Hoidal acknowledged that he had a revolver with him the night that he was arrested on a DUI. Regarding Hoidal's memory of the incident, defense counsel cross-examined Hoidal as follows:

> Q.    Would it be fair to say there are a lot of details of that night that you don't--you don't really remember?
> A.    What--what do you mean?
> Q.    Well, you'd been drinking.
> A.    Yes.
> Q.    Uh, that you--so that there are things about that night that you don't remember very well.
> A.    I--the things that I have stated, I remember them-
> Q.    But there are--
> A.    --pretty well.
> Q.    --other things that you don't remember.
> A.    Possibly, yes.

10

Defense counsel established that Hoidal initially did not want to report the incident to authorities, but that his mother insisted. Hoidal also acknowledged that "now [he had] all of this pressure on [him] to follow through with this."

Defense counsel questioned Hoidal as to the accuracy of his story, underage drinking, desire for an adventure, ability to recall the events of the evening due to alcohol consumption, and motive due to the pressure he was under from his parents and the DUI. As the district court noted, Mantz had approximately two months in which to prepare for his cross-examination of Hoidal. Thus, Mantz was represented by counsel who engaged Hoidal in full and effective cross-examination as to his truthfulness, bias, memory, and motive. *See Pointer*, 380 U.S. at 407.

We next consider whether Mantz was significantly limited in his cross-examination of Hoidal. The record reflects, as noted by the district court, that the magistrate did not restrict defense counsel in terms of time. However, Mantz argues that he was restricted in his cross-examination of Hoidal in one specific instance. Hoidal was arrested for a DUI after his encounter with Mantz but prior to the preliminary hearing. At the preliminary hearing, Mantz was allowed to ask about the existence of the DUI, but when he asked how many drinks Hoidal had consumed on that occasion, the prosecutor objected on grounds of relevance. Defense counsel argued that the questioning was relevant to motive and credibility in the sense of Hoidal attempting to deflect responsibility for his own conduct on the night in question. The magistrate sustained the objection. This was the only limitation imposed by the magistrate. There is no indication that the magistrate sustained the objection because of any limited scope or inherent limitations of a preliminary hearing. Rather, the magistrate sustained the objection on general grounds of relevance. The relevance of the excluded evidence is highly questionable. In any event, even if we were to consider the sustained objection to be a limitation in the Confrontation Clause context, it certainly was not significant enough to rise to the level of a constitutional violation.

We also consider whether there was a showing of any new and significantly material line of cross-examination that would have been developed at trial that was not touched upon in the prior cross-examination. Mantz has made no such showing and asserted at oral argument that the law did not require him to do so. This Confrontation Clause consideration, however, is not new. In *Mancusi*, the Court made clear that where, as here, a witness has died or is otherwise

unavailable, the defendant must "in his proffer show any new and significantly material line of cross-examination that was not at least touched upon in the first trial." *Mancusi*, 408 U.S. at 215. The new and significantly material line of cross-examination principle is related to the "similar motive" element of I.R.E. 804(b)(1). Counsel's motive at trial was the same as at the preliminary hearing, to prove Mantz's innocence by discrediting Hoidal's testimony. *See Stano*, 159 P.3d at 945; *see also Henderson*, 136 P.3d at 1010; *Mohamed*, 130 P.3d at 405. The district court came to the same conclusion, stating:

> Mantz had a similar motive to develop Mr. Hoidal's testimony by cross-examination. Mr. Hoidal was the principal witness against Mr. Mantz at the preliminary hearing. Mr. Mantz's motive at the time of the preliminary hearing was to discredit or undermine Mr. Hoidal's testimony. That is the same motive that will apply at trial.

The preliminary hearing transcript as well as the trial transcript demonstrate that Mantz's opportunity to cross-examine Hoidal at the preliminary hearing was adequate under *Crawford*.

## III.

## CONCLUSION

Mantz's right to confrontation was not violated by admission of Hoidal's preliminary hearing testimony at trial. The judgment of conviction and sentence entered thereon are affirmed.

Chief Judge LANSING and Judge PERRY, **CONCUR.**